OPINION OF THE COURT
Fuchsberg, J.
This is an appeal from an order of the Appellate Division which reversed on the law two judgments, one in favor of the plaintiff, Leslie Havas, against the defendant, Victory Paper Stock Company, and the other in favor of Victory, as third- *384 party plaintiff, against Morgan Guaranty Trust Company, as third-party defendant. Both followed a trial by jury, which, besides passing on liability and damages, also apportioned the damages as between Victory and Morgan. The order of reversal also dismissed the complaint. Raised before us in the main are questions relating to the roles of Judge and jury in a negligence suit.
The facts are essentially undisputed. Havas’ employer, Morgan, had an ongoing arrangement with Victory for the latter to remove bales of wastepapers as they accumulated at the Morgan offices at Wall and Broad Streets in New York City. The bales were bulky. They would weigh as much as a thousand pounds each. The transfer from Morgan to Victory usually was effected by means of a hydraulic forklift which Morgan’s men, working under Havas’ supervision, would use to mechanically raise the bales from the sidewalk to the level of the platform of a Victory flatbed truck, a point at which the latter’s driver would assume control of their placement.
On the day of the accident, however, the lift was out of commission. Rather than send the truck back empty, Havas’ superior, over his objection, devised an ad hoc method of loading the truck. It required certain Morgan employees to position a 10-foot wooden ramp so that it bridged the gap between the sidewalk and the horizontal edge of the bed of the truck, which was three feet above ground level. The bottom of this ramp had no footings or other provision to prevent it from sliding; nor did the top of the ramp, though its lip overlapped the edge of the truck floor, have any built-in device by which it and the truck could be secured to one another. The unsecured and unfastened ramp was then used as a runway up which Morgan employees were manually to move the heavy bales to the truck platform, from which the Victory driver would add a pulling force exerted by means of a heavy iron hook with which he would spear the bales as they approached the top.
This modus operandi apparently was followed without untoward incident as to two bales. But the third turned out to be another matter. Whether due to the great weight of the particular bale or the steepness of the incline of the ramp up which it had to travel, the Morgan crew that was handling the sidewalk end of the operation was experiencing great difficulty in moving it. Noticing their predicament, Havas and another Morgan employee, both of whom happened to be in *385 the vicinity but neither of whom had participated in manipulating the other bales, reacted spontaneously by coming to the assistance of the others. They did so by stepping onto the ramp and there adding their own manpower to the struggle to push the bale toward its intended destination. While engaged in these efforts, and at a time when they and the other Morgan employees had brought the bale to a point at which the Victory driver had already applied his hook to it, the unattached ramp slipped away from the truck and crashed to the ground along with Havas.
Since the articles of property which played some role in this episode — the ramp, the truck, the bale and the hook— were owned by or were in the control of either Victory or Morgan or both, and the only persons who figured in it were employees of either one or the other, conceptually any possible suit in negligence would have to be lodged against Morgan, Victory or possibly their employees. Presumably at least in part because a third-party suit ordinarily will not lie against one’s own employer or fellow servant (see Workers’ Compensation Law, §§ 11, 29, subd 6), plaintiff elected to bring its action against Victory alone, and it was that defendant, not inhibited by the bar of the Workers’ Compensation Law, who brought Morgan in as a third-party defendant. By its verdict, the jury found both liable and apportioned their culpability at 50% each.
In reversing and dismissing, the Appellate Division took the position that there was no duty of reasonable care owed by Victory to Havas and that, in any event, "there was no negligent act or omission on the part of Victory’s driver that proximately contributed to the accident” (66 AD2d, p 954). We disagree on both counts and hold that the Trial Judge properly sent the case to the jury.
It seems to us that the answers to both issues posed by the Appellate Division’s rationale — whether Victory owed a duty to the plaintiff and, if it did, whether, in the face of it, Victory failed to act in a reasonably prudent manner — turn largely on foreseeability. For, despite the broadening of tort liability concepts to reflect economic, social and political developments (see, e.g., Micaleff v Miehle Co., 39 NY2d 376, 386; Codling v Paglia, 32 NY2d 330, 340), in a case which raises such traditional negligence law queries as does the one before us the answers are still to be found in the principle so pungently phrased by Cardozo that "[t]he risk reasonably to *386 be perceived defines the duty to be obeyed, and risk imports relation” (Palsgraf v Long Is. R. R. Co., 248 NY 339, 344). Or, as it is spelled out more precisely in the English case that is the progenitor of the foreseeability principle, "[W]henever one person is by circumstances placed in such a position with regard to another that every one of ordinary sense who did think would at once recognize that if he did not use ordinary care and skill in his own conduct with regard to the circumstances he would cause danger of injury to the person or property of the other, a duty arises to use ordinary care and skill to avoid such danger” (Heaven v Prender, 11 QBD 503, 509, Britt, MR [1883]).
Application of this formula to the events surrounding plaintiffs injury leaves little doubt but that the occurrence of the disaster that befell Havas or a similar consequence to someone else close by need hardly have been a surprise. The shortcomings of the method improvised to get the bales from Morgan to Victory were patent. The strain that the men would have to undergo to manually move weights of up to half a ton would compel them to exert a steadying downward counterforce on whatever surface they were then standing. The surface here could be the ramp. What is more, the ramp, 10 feet in over-all length and with one end raised 3 feet to reach up to the truck platform, would then have to have rested at an angle so steep that it formed a grade in excess of 30%. Above all, the ramp over whose surfaces this heaving and straining, this pushing and pulling, was tó take place was not anchored in place at either end.
True it is that plaintiff neither offered nor produced expert testimony on these matters. But these consisted exclusively of facts whose significance could be well divined by laymen. Therefore, bearing in mind that modern juries are not bereft of educated and intelligent persons who can be expected to apply their ordinary judgment and practical experience, expert testimony was not required. (McCormick, Evidence, § 13; see Salem v United States Lines Co., 370 US 31, commented on in Lambert & Joost, Comments on Recent Important Admiralty Cases, 29 NACCA LJ 292, 335.)
In identifying the broad principles by which the parties’ conduct was to be judged, the trial court was therefore “correct in indicating that, at the worst, it could be said that reasonable people would differ as to whether the risk of injury to the plaintiff was foreseeable (see Prosser, Torts [4th ed], § 37, p *387 206). But we are still called upon to say whether Victory bore such a relation to the circumstances as to saddle it, rather than or in addition to Morgan, with a duty to avoid the danger to be anticipated.
In this connection, we first observe that the parties have made our task easier by taking no exception to the instructions "that the accident * * * occurred during the process of loading the defendant Victory’s vehicle” and "that the act of loading a vehicle is to be considered by you as part of the normal use and operation of a vehicle.” As far as it went, this charge, of course, vitally charted the parties’ course (Martin v City of Cohoes, 37 NY2d 162).
However, there was much more. If the Victory driver did not formally consent, he at least acquiesced in the method employed to get the bales in his truck. The fact that the ramp was not secured to the truck and therefore could readily ride away from it was obvious. So was the precipitous incline it formed. When the ramp did come away, the driver was not merely waiting for the others to move the fateful bale, which was then resting partly on the truck and partly off, presumably at the very location from which the ramp dropped. There was testimony that at that time he was actually helping move the bale, pulling it with his hook, while the Morgan people were pushing it towards him. In short, the effort to move the bales was a combined one in which Victory and its driver and Morgan and its men joined affirmatively, thereby so commingling their efforts that it cannot be said as a matter of law that each participant did not owe a duty to avoid subjecting the others to unreasonable hazards.
In fact, as co-operators in what could be found to be an informal, or even tacit, arrangement to act in concert to achieve a common, though limited, objective (on Morgan’s part, to rid itself of the bales, and, on Victory’s, to pick up what it came for rather than to return empty-handed), Morgan and Victory may each be regarded as having had a voice in directing the conduct of the other (see Restatement, Torts 2d, § 491, Comment b; see, generally, Prosser, Joint Torts and Several Liability, 25 Cal L Rev 413). Indeed, the picture of Victory’s driver and the Morgan personnel at opposite ends of the ramp irresistibly calls up a comparison with the roughly analogous positions of members on the same team in a tug-of-war or persons on opposite sides of a seesaw; what one does invariably has a direct effect on the others.
*388 This brings us to the question as to whether defendant breached this duty by negligence on its part. It was particularly appropriate to leave this issue to the jury, not only because of the idiosyncratic nature of most tort cases (Pound, Introduction to the Philosophy of Law [rev ed, 1954], p 71), or because there was room for a difference in view as to whether Victory’s conduct in the particular circumstances of this case did or did not evidence a lack of due care, but, perhaps above all, because, in the determination of issues revolving about the reasonableness of conduct, the values inherent in the jury system are rightfully believed an important instrument in the adjudicative process (see Fleming, Torts [3d ed, 1965], p 271; Weiner, Civil Jury Trial and the Law-Fact Distinction, 54 Cal L Rev 1867, 1887-1891, 1938).*
For all these reasons, the order from which this appeal is taken should be reversed and the case remitted to the Appellate Division, Third Department, for review of the facts pursuant to CPLR 5613.

 Because the Appellate Division, in reversing on the law, did not find it necessary to treat with the defendant’s claim that plaintiff was contributorily negligent, we make no comment on that subject except to point to the ameliorative eye the law casts on the conduct of those who act in emergencies, or, as in Broderick v Cauldwell-Wingate Co. (301 NY 182) and Boerio v Haiss Motor Trucking Co. (7 AD2d 228), under the economic compulsion of an employer-employee relationship.