BENEFICIAL COMMERCIAL
CORPORATION, Plaintiff,

v.

MURRAY GLICK DATSUN, INC., D.C.
Leasing and Rental Co., Inc., Edward
Lesiak, Carmela Lesiak, Dominick P.
Cirelli, Sr., Kandis Cirelli, Upstate Dat-
sun, Inc., and Nissan Motor Corpora-
tion in U.S.A., Defendants.

No. 83 Civ. 3141 (JMC).

United States District Court,
S.D. New York.

Jan. 25, 1985.

Shaw, Goldman, Licitra, Levine & Weinberg, Garden City, N.Y. (Jesse I. Levine, Garden City, N.Y., of counsel), for plaintiff.

Cadwalader, Wickersham & Taft, New York City (Howard R. Hawkins, Jr., Earl H. Nemser, New York City, Young, Rose & Millspaugh, Roseland, N.J., of counsel), for defendant Nissan Motor Corp.

## MEMORANDUM AND ORDER

CANNELLA, District Judge.

Defendant Nissan Motor Corporation's ["Nissan"] motion to dismiss the amended complaint is granted in part and denied in part. Fed.R.Civ.P. 12(b)(6).

## FACTS

Plaintiff commenced this action in New York Supreme Court seeking damages from defendants Nissan and Peter J. Ng for breach of fiduciary duties, damages from all other defendants for fraud, and damages from Murray Glick Datsun ["Glick"] for conversion. Plaintiff added a claim for negligence against Nissan in the amended complaint. Upon motion, the Court determined that the claims against Nissan were separate and independent from the claims against the nondiverse defendants and were properly removable to federal court. 28 U.S.C. § 1441(c). The Court then removed the entire action noting that there was no opposition and finding that it would further judicial economy to retain the claims against the nondiverse defendants. Memorandum and Order, 83 Civ. 3141 (JMC) (S.D.N.Y. Dec. 20, 1983). This action was dismissed against defendant Ng by stipulation and order on July 23, 1984. Nissan now moves to dismiss the amended complaint.

On August 20, 1982, plaintiff and Glick entered into a "dealer floor plan loan and security agreement" under which plaintiff purchased Nissan motor vehicles for Glick, an independent franchise dealer of Nissan. The agreement provided that plaintiff would receive title for the vehicles; thereafter, Glick would sell the automobiles, pay plaintiff, and in return plaintiff would release title to Glick, who would then transfer it to the purchaser. This financing agreement secured plaintiff's right to repossess any cars it had purchased if Glick defaulted. On September 17, 1982, plaintiff and Nissan entered into a letter agreement whereby Nissan agreed to repurchase vehicles from plaintiff if Glick's dealership was terminated or liquidated.

Glick allegedly went "out of trust" by selling 20 automobiles and 4 small trucks and failing to pay plaintiff from the proceeds of these sales. On December 13, 1982, plaintiff suspended its financing of Glick. There is no dispute that Nissan complied with its agreement to repurchase

unsold vehicles from plaintiff after Glick's dealership was terminated.

Plaintiff alleges, however, that Nissan allowed conditions to exist which left plaintiff with few cars to repossess. Plaintiff contends that at some time after the agreements were signed, Nissan learned that Glick was going to terminate by selling his franchise to another Nissan dealer and that Glick had gone "out of trust" on a prior occasion. The amended complaint alleges that Nissan had a fiduciary duty to inform plaintiff that Glick was planning to terminate his dealership franchise and that Nissan is liable for failing to control Glick and disclose relevant information.

In moving to dismiss the amended complaint, Nissan asserts that as a matter of law it had no fiduciary duty to warn plaintiff of Glick's proposed termination and that plaintiff can not recover under any tort theory. Plaintiff argues in response that there are questions of fact concerning Nissan's relationship with Glick which might impose a duty to warn.

## DISCUSSION

### Fiduciary Duty

■ Plaintiff maintains that Nissan owed it a fiduciary duty because Nissan (1) "protected" the floor plan financing arrangement between plaintiff and Glick; (2) had access to certain information about Glick; and (3) knew of Glick's proposed plans. Notwithstanding plaintiff's allegations, New York law is clear that a fiduciary relationship exists from the assumption of control and responsibility, *see Gordon v. Bialystoker Center & Bikur Cholim, Inc.*, 45 N.Y.2d 692, 698, 385 N.E.2d 285, 288, 412 N.Y.S.2d 593, 596 (1978), and is founded upon trust reposed by one party in the integrity and fidelity of another, *see Penato v. George*, 52 A.D.2d 939, 942, 383 N.Y. S.2d 900, 904 (2d Dep't 1976), *appeal dismissed*, 42 N.Y.2d 908, 366 N.E.2d 1358, 397 N.Y.S.2d 1004 (1977). No fiduciary relationship exists under the facts alleged in the pleadings which show that the two parties were acting and contracting at arm's length. Moreover, courts have re-

jected the proposition that a fiduciary relationship can arise between parties to a business transaction. *See Grumman Allied Indus., Inc. v. Rohr Indus., Inc.*, 748 F.2d 729 at 738–39 (2d Cir.1984); *Wilson-Rich v. Don Aux Assocs., Inc.*, 524 F.Supp. 1226, 1234 (S.D.N.Y.1981); *see also DuPont v. Perot*, 59 F.R.D. 404, 409 (S.D.N.Y.1973) ("no precedent for the proposition that a fiduciary relationship is created between a creditor and a third party merely by reason of a contract between the third party and the creditor's debtor").

■ Although a "confidential" relationship may conceivably arise where confidence is based upon prior business dealings, *see Levine v. Chussid*, 31 Misc.2d 412, 415, 221 N.Y.S.2d 311, 313 (N.Y.Sup.Ct. 1961), there is no allegation of a previous relationship between plaintiff and Nissan. *See also Wilson-Rich v. Don Aux Assocs., Inc., supra*, 524 F.Supp. at 1234 ("fiduciary relation is to be distinguished from a merely confidential relation ... a confidential relation is simply one of the elements to be considered in determining whether there is fraud or undue influence or overreaching") (*quoting* I Scott on Trusts § 2.5, at 40 (3d ed. 1967)). Accordingly, count three of the amended complaint is dismissed.

### Tort Theory
### Aiding and Abetting

■ Plaintiff alleges that Nissan may be liable for aiding and abetting a fraud by failing to warn about Glick's proposed termination. Under New York law, three elements must be asserted in order to state a claim for aiding and abetting: (1) an allegation that the principal/third party violated the law; (2) an allegation that defendant knew or should have known that the violation was occurring; and (3) an allegation that defendant's conduct gave substantial assistance or encouragement to defendant to engage in tortious conduct. *See Lanza v. Drexel & Co.*, 479 F.2d 1277, 1303 (2d Cir.1973); *Odette v. Shearson, Hammill & Co.*, 394 F.Supp. 946, 960–61 (S.D.N.Y. 1975); RESTATEMENT (SECOND) OF

TORTS § 876 (1977). Although the aiding and abetting cases deal mainly with securities laws violations, this tort can be committed in other settings. Here, however, plaintiff has failed to allege facts sufficient to show that Nissan aided and abetted a fraud. The pleadings can be construed to support an assertion that Nissan violated the first two elements of this cause of action; however, the amended complaint does not sufficiently allege that Nissan gave substantial assistance or encouragement to Glick. *See, e.g., Odette v. Shearson, Hammill & Co., supra,* 394 F.Supp. at 960 (falsification of books concealed third party securities violations); *Fischer v. Kletz,* 266 F.Supp. 180, 196 (S.D.N.Y.1967) ("no basis for transforming silence into actionable aiding and abetting"); *Brennan v. Midwestern United Life Ins. Co.,* 259 F.Supp. 673, 680 (N.D.Ind.1968) ("insider" silence violated duty to disclose to investors); *Pettit v. American Stock Exchange,* 217 F.Supp. 21, 28 (S.D.N.Y.1963) (independent duty imposed under Securities Exchange Act).

*Duty to Disclose*

■ A common law claim for a breach of the duty to disclose facts and circumstances relevant to business contract negotiations may arise when there is a fiduciary relationship between the parties, *see Coface v. Optique du Monde, Ltd.,* 521 F.Supp. 500, 504 (S.D.N.Y.1980); *Wood v. Amory,* 105 N.Y. 278, 281–82, 11 N.E. 636, 637 (1887), or when defendant possesses superior knowledge, not readily available to the plaintiff, and knows that plaintiff is acting under a mistaken belief with respect to a material fact. *See Grumman Allied Indus., Inc. v. Rohr Indus., Inc., supra,* 748 F.2d at 738; *Warren Bros. Co. v. New York State Thruway Auth.,* 34 A.D.2d 97, 99, 309 N.Y.S.2d 450, 452 (3d Dep't 1970), *aff'd,* 34 N.Y.2d 770, 314 N.E.2d 878, 358 N.Y.S.2d 139 (1974).

■ The conclusion that Nissan did not owe a fiduciary duty to plaintiff forecloses the first situation, and the claim of fraudulent concealment based on superior knowledge also fails as a matter of law, even assuming the facts in the amended complaint to be true. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Ryder Energy Dist. Corp. v. Merrill Lynch Commodities Inc.,* 748 F.2d 774 at 779 (2d Cir.1984). Although the contract between plaintiff and Glick was signed in August 1982, the plaintiff-Nissan contract was not signed until September 1982. The amended complaint alleges that Nissan knew of Glick's termination plan only as early as November 15, 1982, which was less than a month before plaintiff suspended its financing of Glick. The sequence of events manifest that Nissan did not withhold any relevant material knowledge during the "negotiation" of either contract. *See Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank,* 731 F.2d 112, 123 (2d Cir.1984). Moreover, a duty to disclose will not be imposed unless there is evidence that defendants were "on notice" that plaintiffs were acting upon a mistaken belief based on inferior information. *Frigitemp Corp. v. Financial Dynamics Fund, Inc.,* 524 F.2d 275, 283 (2d Cir.1975); *see also Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, supra,* 731 F.2d at 124 (no "direct inquiry"). The amended complaint does not suggest that Nissan knew that plaintiff was acting under misapprehensions, material or otherwise.

The Court recognizes the growing trend to impose a duty to disclose in many circumstances in which silence used to suffice: "Steps have been taken toward application of the 'special facts' doctrine in a broader array of contexts where one party's superior knowledge of essential facts renders a transaction without disclosure inherently unfair." *Chiarella v. United States,* 445 U.S. 222, 248, 100 S.Ct. 1108, 1124, 63 L.Ed.2d 348 (1980) (Blackmun, J., dissenting); *see also Gaines Serv. Leasing Corp. v. Carmel Plastic,* 105 Misc.2d 694, 697, 432 N.Y.S.2d 760, 762–63 (N.Y.Civ.Ct. 1980) (advantage taken by silence shocks the ethical sense of the community), *aff'd,* 113 Misc.2d 752, 453 N.Y.S.2d 391 (Sup.Ct. App.Term 1981); RESTATEMENT (SEC-

## 774

OND) OF TORTS § 551; W. Prosser, THE LAW OF TORTS (4th ed. 1971) § 106 at 698 ("The law appears to be working toward the ultimate conclusion that full disclosure of all material facts must be made whenever elementary fair conduct demands it."). New York courts have recognized the need for a flexible handling of the duty to disclose but have imposed the "on notice" requirement and have also restricted the duty to speak to situations in which plaintiff's reliance on defendant induced it to enter certain unfair transactions. *See Minpeco S.A. v. Conticommodity Servs., Inc.*, 552 F.Supp. 332, 336–38 (S.D.N.Y. 1982) (purchase and sale of silver futures); *Donovan v. AEolian*, 270 N.Y. 267, 270, 272, 200 N.E. 815, 817 (1936) (purchase of piano).

Plaintiff does not allege that it relied on any inaction or conduct of Nissan before entering into the financing agreement with Glick. Any knowledge about Glick's proposed termination which can be attributed to Nissan arose only after both contracts had been signed. Moreover, there is nothing inherently unfair about an arm's length financing contract. Plaintiff had ample opportunity and resources to investigate Glick's financial stability. Unlike the purchasers in *Minpeco* and *Donovan*, plaintiff was essentially lending money in return for tangible collateral. Although Nissan agreed to repurchase vehicles if Glick defaulted, it can not be held responsible for the alleged intervening conversion. *See Tirado v. Lubarsky*, 49 Misc.2d 543, 544, 268 N.Y.S.2d 54, 56 (N.Y.Civ.Ct.), *aff'd*, 52 Misc.2d 527, 276 N.Y.S.2d 128 (N.Y.App. Term 1966). The Court rejects plaintiff's contention that its contract with Glick constituted an indefinite series of credit transactions that imposed a continual duty on Nissan to alert plaintiff to possible changes in Glick's business stance. Nissan's contract was with plaintiff, not Glick. Nissan has fully complied with its obligation to repurchase vehicles from plaintiff. The Court will not bootstrap a duty to disclose information about third parties on to an implied covenant of good faith performance. *See* N.Y.U.C.C. § 1–203; T.G.I.

*East Coast Constr. Corp. v. Fireman's Fund Ins. Co.*, 534 F.Supp. 780, 782 (S.D. N.Y.1982); *In re Davidoff*, 351 F.Supp. 440, 444 (S.D.N.Y.1972); *Van Valkenburgh, Nooger & Neville, Inc. v. Hayden Publishing Co.*, 30 N.Y.2d 34, 45, 281 N.E.2d 142, 145, 330 N.Y.S.2d 329, 333 (1972).

*Foreseeability as Duty to Disclose/Warn*

Finally, the Court must address the issue of whether a legal duty can be based upon the foreseeability of Glick's conversion. The seminal New York case analyzing the interrelationship between duty and foreseeability, *Palsgraf v. Long Island R.R. Co.*, 248 N.Y. 339, 344, 162 N.E. 99, 100 (1928) (Cardozo, C.J.) sets forth the idea that a duty to act can arise from foreseeable dangers: "The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension." *See also MacPherson v. Buick Motor Co.*, 217 N.Y. 382, 394, 111 N.E. 1050, 1054 (1916) (Cardozo, J.) ("foresight of the consequences involves the creation of a duty"). Cardozo's theory of duty has been the subject of continual criticism. *See Palsgraf v. Long Island R.R. Co., supra*, 248 N.Y. at 350, 162 N.E. at 103 (Andrews, J., dissenting) ("There needs be duty due the one complaining, but this is not a duty to a particular individual because as to him harm might be expected."); *Pulka v. Edelman*, 40 N.Y.2d 781, 785, 358 N.E.2d 1019, 1022, 390 N.Y.S.2d 393, 396 (1976) ("Foreseeability should not be confused with duty. The principle expressed in [*Palsgraf*] is applicable to determine the scope of duty—only after it has been determined that there is a duty.") (defendant inaction did not give rise to liability for third party action). However, the New York Court of Appeals recently quoted Cardozo's language and reaffirmed that whether defendant owes a duty to plaintiff "turn[s] largely on foreseeability." *Havas v. Victory Paper Stock Co.*, 49 N.Y.2d 381, 385, 402 N.E.2d 1136, 1138, 426 N.Y.S.2d 233, 236 (1980) (defendant liable for own inaction).

Although it is unclear whether the New York Court of Appeals would allow foreseeability to give rise to a duty of disclosure in a case involving an intervening wrongdoer, the Court proceeds as if *Havas* is controlling on this issue. The Court must thus turn to the pleaded facts to ascertain whether the harm to plaintiff was foreseeable. A recent Second Circuit decision that discusses the interrelationship of duty and foreseeability in a context similar to the present facts is informative. *See Cullen v. BMW of North America, Inc.,* 691 F.2d 1097, 1101 (2d Cir.1982); *id.,* 691 F.2d at 1101–02 (Oakes, J., dissenting).[1]

In *Cullen,* the district court held that BMW was liable for injuries resulting to a consumer from the criminal act of a dealer who absconded with an $18,000 deposit for an automobile. The Court found that BMW had been previously apprised of its franchisee's [Bavarian Auto] financial instability and "propensity for unscrupulous business transactions." *Cullen v. BMW of North America, Inc.,* 531 F.Supp. 555, 565–66 (S.D.N.Y.), *rev'd,* 691 F.2d 1097 (2d Cir.1982). Notwithstanding this knowledge, BMW had allowed Bavarian Auto to operate as a duly franchised dealer after its franchise agreement had terminated. Thereafter, BMW's failure to close down its dealer constituted a substantive cause of plaintiff's injury because BMW had acquiesced to a material misrepresentation of business as usual. *See id.* at 565–66. Because BMW had "both opportunity and capability to decrease or foreclose the risk of harm," *id.* at 564, and was aware of plaintiff's unethical propensities, the court ruled that BMW had a duty to prevent plaintiff's reliance on the indicia of a stable franchise and held that BMW should have reasonably foreseen the resulting financial harm to consumers who might transact with Bavarian Auto. *See id.* at 566.

The Second Circuit reversed, finding that although BMW had knowledge of the franchisee's "precarious financial condition", it was not liable as a matter of law under a negligence theory because Bavarian Auto was an independently operated dealership and BMW could not reasonably have controlled or foreseen the dealer's criminal activity. *Cullen,* 691 F.2d at 1101. Like the defendant in *Cullen,* Nissan could not have controlled Glick, but it could have conceivably warned plaintiff. Whether Nissan had enough information to foresee Glick's conversion and whether it should have disclosed its premonitions to Glick is ultimately a question of fact. *See Berg v. Underwood's Hair Adaption Process, Inc.,* 751 F.2d 136 at No. 84–7675, slip op. at 1055 (2d Cir. Dec. 26, 1984) (duty to warn). Plaintiff has a stiff burden to overcome and additionally, it must show that Nissan's failure to disclose was a substantial cause of the harm incurred. Although it appears likely that plaintiff would have been harmed anyway, a determination of proximate cause is also a question of fact. The Court can not determine from the pleaded facts whether there is no negligence as a matter of law, and accordingly, Nissan's motion to dismiss count four of plaintiff's amended complaint is denied.

## CONCLUSION

Nissan's motion to dismiss the amended complaint is granted in part and denied in part. Fed.R.Civ.P. 12(b)(6).

The Clerk of the Court is directed to prepare and enter Judgment dismissing count three of the amended complaint.

The parties are directed to conclude any remaining discovery and submit a joint pretrial order by February 18, 1985. The pretrial order should not exceed six pages and

---

1. Plaintiff's reliance on *Snyder v. Four Winds Sailboat Centre, Ltd.,* 701 F.2d 251 (2d Cir.1983) (per curiam), an opinion that also discusses the duty-foreseeability relationship, is misplaced. In *Snyder,* the district court granted a judgment for a boat owner against a marina owner for the loss of plaintiff's boat, which had been stolen from the marina. The Second Circuit affirmed the district court's finding that a bailment relationship existed between the owners and that the marina should have taken additional precautions when it learned that a thief had burglarized a nearby marina. *Id.* at 252–53. Because no bailment relationship exists here, the case is not controlling.

should contain headings of: undisputed issues of fact, disputed issues of fact, issues of law, list of witnesses and estimated length of trial.

This case will be called for nonjury trial in March-April 1985. The parties will be given the trial date upon receipt of the pretrial order.

SO ORDERED.