OPINION OF THE COURT
Louis B. York, J.
*774 Plaintiff has moved to preclude defendant’s expert, William Berkowitz, from testifying as to whether the plaintiff rebuilt the collapsed garage “as soon as reasonably possible” as required by the insurance policy. The Appellate Division had modified the court’s decision with regard to this clause (43 AD3d 23 [2007]). It decided that the court had erred in finding that the defendant insurance company had repudiated the insurance policy and remanded on the issue, inter alia, whether the garage was rebuilt as soon as reasonably possible. Defendant has cross-moved to prevent plaintiffs expert, Jerome Haims, from testifying as to actual cash value.
The Appellate Division’s remand states that this is a question of fact that should have been submitted to the jury. If the jury determines that the garage was built as soon as was reasonably possible, the jury’s prior damages award on that issue has already decided the replacement cost. But if the jury decides that the rebuilding did not occur within a reasonable time, then the plaintiff is limited to the actual cash value which would have to be decided by the current jury.
In his “Expert’s Report,” Berkowitz opined on whether the reconstruction occurred within a reasonable time. To do this, he separated the plaintiffs efforts into five separate categories. They are (1) the forensic investigation of the entire garage to see if the uncollapsed portion could be salvaged; he asserts that this was delayed for IV2 months; (2) the selection of an architect to design the new garage, which he claims was delayed 41/2 months; (3) a delay of 2V2 months in the designing of the project; (4) an unreasonable delay of 6V2 months in the bid phase; and finally, (5) the actual construction of the new garage, which he opines was delayed three months. These delays add up to an unreasonable delay of 18 months.
There are a variety of reasons for granting plaintiffs motion to preclude this witness from testifying. First and foremost, the Appellate Division’s remand stipulated that the question of whether plaintiffs actions occurred within a reasonable time should go to the jury. Moreover, this is clearly an ultimate fact which is to be decided by the jury and the answer to it will directly impact the type of liability the defendant is exposed to and the measure of damages. By and large, expert witnesses should be prohibited from usurping the jury’s function (Nevins v Great Atl. & Pac. Tea Co., 164 AD2d 807, 809 [1st Dept 1990]), except in the most complicated, technical and scientific questions “beyond the ken” of the average juror (De Long v County of Erie, 60 NY2d 296, 307 [1983]), which this is not.
*775 Mr. Berkowitz’ resume states that he is a principal of Alliance Construction Consultants. For the past 20 years, he has been a professional consultant specializing in the resolution of construction disputes. Prior to his present professional involvement, he spent 16 years managing public and private construction projects. He was a project manager for a general contractor for five years. He has a B.S. degree in civil engineering and a M.S. degree in construction management, and is licensed as a professional engineer in New York State.
Modern juries are fully capable of making sensible decisions using their common sense and “practical experience” (Havas v Victory Paper Stock Co., 49 NY2d 381, 386 [1980]). Finally, the expert’s opinion should be derived from some objective criterion which allows others to duplicate the process by which he arrives at that opinion, not the ipse dixit conclusions reached by this expert.
Berkowitz certainly has the expertise to describe the process by which a collapsed job is rebuilt, and to break down that process into the categories he has described in his reports to the defendant. If he has participated in such a project, he may describe that and testify to the time it took to finish those categories in that project. But he cannot testify as to his opinion of the time it should have taken for plaintiff to rebuild, and he is precluded from offering his opinion as to whether the garage was rebuilt as soon as was reasonably possible.
We now turn to defendant Greater New York Mutual Insurance Co.’s (GNY) cross motion to preclude Jerome Haims, Seward’s real estate appraisal expert, from testifying on behalf of Seward regarding the actual cost value (ACV) of the garage at the time of collapse. In his expert report, Haims explains he relied on the “Cost Approach” method to determine his ACV figures for the collapsed garage. GNY argues that Haims’ testimony should be precluded because the replacement cost value (RCV) he relies on to make a determination of ACV is higher than the RCV determination made by the jury in the first trial. GNY argues that Haims then deducts values for depreciation and improvement that did not exist in the original garage. GNY further alleges that Haims’ ACV calculation relied on items not related to replacement cost because they did not exist before the collapse of the garage, and that Haims improperly relies on testimony of Seward’s other experts, Tal Eyal and Robert Lawless.
GNY argues that the RCV arrived at by the jury in the first trial should be determinative in Haims’ ACV computations. It *776 claims that collateral estoppel bars Seward from relitigating the RCV already determined by the jury. GNY argues that Haims’ analysis should not be permitted because he “rejects the jury’s determination of replacement cost and relies on evidence that has been rejected and discredited by the jury.” GNY contends that Haims should rely not on Eyal’s testimony, but rather on the determination of RCV made by the jury minus the property-not-covered portions of the jury award.
Seward, on the other hand, asserts that the jury award vacated by the Appellate Division has no preclusive effect on Haims’ testimony. Seward claims that collateral estoppel does not apply and that Haims’ testimony should be admitted under the “Broad Evidence” rule. Seward contends that ACV was not deliberated over or determined by the jury in the first trial. As support, Seward points to this court’s April 10, 2008 restitution decision to advocate that ACV was not considered at the first trial. Seward argues that the Appellate Division’s decision vacated the award in its entirety and ordered a new trial; therefore there are no limitations on the methods of proving the ACV damages. Seward argues that the court should allow the jury to hear a broad variety of evidence in order to determine the ACV including evidence such as the testimony of witnesses, cost of repair, and full replacement cost value.
The doctrine of collateral estoppel generally exists to reduce litigation in the courts and preserve judicial resources. (See Kaufman v Eli Lilly & Co., 65 NY2d 449, 455 [1985].) Collateral estoppel bars a party from relitigating an issue that has already been decided as a matter of fairness and as an attempt to avoid inconsistent results. (Id.) The courts generally demand two requirements be satisfied in order for collateral estoppel to apply: identity of issue, which issue has been decided in the prior action and is decisive in the present action, and the party to be precluded from raising the issue must have had a “full and fair opportunity” to litigate the issue. (Id.) As the party seeking to utilize the doctrine of collateral estoppel, GNY has to demonstrate the identity of issue in the present action before the court, and the party opposing collateral estoppel, Seward, has the burden of showing that it lacked a full and fair opportunity to litigate the issue in the first proceeding. (See id.)
Seward relies on this court’s restitution order to emphasize that a calculation of ACV would be necessary because those calculations were never presented to the jury. However, this court also stated that the language of the Appellate Division *777 does not necessitate a recalculation of damages if the jury determined that Seward rebuilt the garage “as soon as reasonably possible” because the RCV award was already previously determined by the jury. The only modification to be made from the RCV award would be the deduction the Appellate Division determined for noncovered expenditures. The court also pointed out that it is unlikely for an ACV determination, which takes into account depreciation of the building, to be higher than the damages awarded by the first jury.
Haims’ testimony is also barred by the law of the case. Similar to other estoppel doctrines, the law of the case is designed to limit relitigation of issues which the parties had a full and fair opportunity to litigate at the initial determination of an issue, but when no final judgment had been rendered. (See People v Evans, 94 NY2d 499, 502 [2000].) Here, since there has been no final determination on whether Seward rebuilt the garage as soon as reasonably possible, the doctrine of the law of the case is applicable. While collateral estoppel is usually utilized for issues decided in a prior action, the law of the case is used in a continuing litigation. (See id.)
The doctrine of the law of the case “expresses the practice of courts generally to refuse to reopen what has been decided” by a judge in the case on the same or higher level of the judiciary and to adhere to the prior decision on a judicially determined issue. (Id. at 503, quoting Messenger v Anderson, 225 US 436, 444 [1912].) Similar to collateral estoppel, the law of the case doctrine aims to reduce the relitigation of judicial decisions in a continuing litigation and help conserve the resources of the judiciary and the parties involved in the litigation. (See generally People v Evans, 94 NY2d 499 [2000].) The Appellate Division, as a higher court, has provided a decision on RCV and clarified the jury award in this continuing litigation that this court should adhere to because of the law of the case.
While the court has been unable to locate previous cases in New York directly on this point, law of the case has implications on the first jury trial RCV determination. Law of the case doctrine has been applied to an appellate court’s determination of a legal issue’s conclusive effect on the trial court or the same appellate court involving the same case and substantially the same facts when the issue comes up again. (See Werthner v Olenin, 186 Misc 829, 831 [1945].) It has also been used to bar relitigation of an issue decided or implicated by another court at the same level in a continuing litigation. Law of the case was ere *778 ated as a matter of convenience and judicial discretion to reduce relitigation of issues already resolved. The jury verdict in the first trial has served the purpose of determining the RCV in this continuing litigation. Like a previous judicial determination, the jury came to a determination of the RCV based on the merits of the evidence presented by both parties. (Baldasano v Bank of N.Y., 199 AD2d 184, 185 [1st Dept 1993] [“(L)aw of the case (has been applied) only to legal determinations that were necessarily resolved on the merits in the prior decision”].) It would seem, therefore, that a previous jury verdict, that has in this case only been vacated to the extent of property not covered under the insurance policy by the Appellate Division, would bar relitigation on the RCV issue under the doctrine of the law of the case. Indeed, other jurisdictions have supported this proposition in their decisions. (See e.g. Monfils v Taylor, 165 F3d 511, 520-521 [7th Cir 1998] [holding that first jury trial implicitly tried constitutional question as to defendant’s individual capacity not explicitly presented by finding liability as to his capacity in a collective verdict; appellate court applied jury verdict in trial under law of the case principle to establish liability for violation of constitutional right claims in the individual capacity; defendant was present and presented evidence at first trial but specific question of his individual capacity liability was not presented to jury]; Lawton v George A. Yancey Trucking Co., 84 NC App 522, 525, 353 SE2d 267, 268 [1987] [agreeing with jury instruction on retrial in a bifurcated case that jury verdict in first trial, affirmed by appellate court, determined nonnegligence on part of plaintiff and was law of the case].)
Seward is correct in its assertion that the ACV determination has not, as of yet, been litigated by the parties or heard by a jury. However, the issue of RCV has been litigated and an outcome was reached by the jury in the first trial and modified on appeal. RCV as an issue, was essential to the determination of the first trial, and remains essential to the calculation of ACV in the second trial if the jury determines that Seward did not rebuild as soon as reasonably possible under the circumstances. (Schwartz v Public Adm’r of County of Bronx, 24 NY2d 65, 69 [1969] [“(W)here it can be fairly said that a party has had a full opportunity to litigate a particular issue, he cannot reasonably demand a second one”].)
The parties have spent considerable time and resources litigating the issue of RCV and the jury, after being presented with all the evidence, came to a determination of RCV To reliti *779 gate and again present evidence regarding RCV would be fundamentally against conservation of resources and unfair to the parties. Given that the second juiy may find the RCV to differ in determining the ACV inconsistent and contradicting verdicts could result.
While the court agrees with Seward’s assertion that broad evidence may be considered in determining ACV and that it is not limited to subtracting depreciation from RCV the issue of RCV was already litigated thoroughly by the parties and decided by the jury. The Appellate Division vacated the judgment only so far as it was incorrectly based on RCV without evidence presented of whether Seward rebuilt the garage in a reasonable amount of time. Haims’ expert testimony, therefore, should be precluded as it relies on RCV computations not determined by the first jury trial. Haims’ expert report further included amounts strictly vacated by the Appellate Division for property not covered. Because of these computations, Haims’ expert testimony should be precluded from trial. It should be noted that if Haims’ depreciation calculations had relied on the jury’s objective RCV conclusion and had taken into account that sections of the property should not have been covered under the policy, it is likely that his expert testimony would not have been precluded from trial.
For the reasons stated above, it is ordered that William Berkowitz is precluded from offering his opinion as to whether the plaintiffs garage and its constituent parts were rebuilt as soon as was reasonably possible; and it is further ordered that the testimony of Jerome Haims as to actual cash value is precluded for consideration in the forthcoming trial.