**V–1 OIL COMPANY, Plaintiff,**

v.

**CC & T, INC., a Wyoming corporation, the Estate of Michael James Woodward and Louis Stewart, Defendants.**

**Civ. No. 86–NC–158W.**

United States District Court,
D. Utah, N.D.

May 1, 1987.

---

Reid Tateoka, William J. Hansen, Salt Lake City, Utah, for plaintiff.

D. Gary Christian, Heinz J. Mahler, Salt Lake City, Utah, for defendants.

## MEMORANDUM DECISION AND ORDER

WINDER, District Judge.

This matter is before the court on defendant Louis Stuart's ("Stuart") motion to dismiss for lack of jurisdiction. Oral argument was heard April 27, 1987. Defendant Stuart was represented by D. Gary Christian. Plaintiff V–1 Oil Company ("V–1 Oil") was represented by Reid Tateoka. After oral argument, the court took the matter under advisement and carefully reviewed the entire file in addition to various pertinent authorities. Being now fully advised, the court renders the following memorandum decision and order.

### Factual Background

The facts pertinent to Stuart's motion to dismiss are undisputed. On October 16, 1986, co-defendant Michael James Woodward ("Woodward"), a Wyoming resident, was driving a semitractor trailer along State Highway 16 in Utah when a cow owned by defendant Stuart, who is a resident of Utah, wandered onto State Highway 16. Woodward's truck collided with the cow and then veered off the road and struck a propane tank and other equipment owned by plaintiff V–1 Oil. This subsequent collision caused an explosion and fire that resulted in Woodward's death as well as the destruction of V–1 Oil's property.

In its action for property damages, V–1 Oil named as party defendants, Stuart, and the estate of Woodward and CC & T, Inc., a Wyoming corporation for which Woodward was working at the time of the accident. Even though Idaho is V–1 Oil's place of original incorporation and its principal place of business, V–1 Oil subsequently incorporated in Utah and Wyoming as well.

### Disputed Issue

Defendant Stuart argues that the complete diversity of citizenship required under 28 U.S.C. § 1332(a)(1) for federal jurisdiction is lacking. Plaintiff's response is that adequate diversity exists by virtue of the "forum doctrine." In his reply, Stuart contends that the forum doctrine was invalidated by the 1958 amendment to 28 U.S.C. § 1332(c).

Since jurisdiction in this matter depends on whether there is diversity of citizenship between V–1 Oil and Stuart, the issue boils down to what effect, if any, the 1958 amendment to 28 U.S.C. § 1332(c) has on the forum doctrine. It appears that, in the absence of direction from the United States Supreme Court, only two circuit courts have taken a position on this issue. The Tenth Circuit is not among them.

### Discussion

Under the forum doctrine, if a suit is brought by or against a multi-state corporation in one of its states of incorporation, the corporation is treated, for diversity purposes, as if it is a citizen of the forum state only. 1 Moore's Federal Practice ¶ 0.78[1.–1], page 723.2 (1986); 13B Wright, Miller & Cooper's Federal Practice and Procedure § 3626, pages 644–45 (2d ed. 1984). The forum doctrine developed in the late 1800's and early 1900's as a result of an obsolete theory of corporation law that a corporation dwells only in its state of incorporation and cannot exist elsewhere. The doctrine evolved primarily around railroad cases, beginning with *Ohio & Mississippi Railroad Company v. Wheeler*, 1 Black 286, 17 L.Ed. 130 (1861), in an attempt to ensure multi-state corporations' accessibility to

and through federal court by way of diversity jurisdiction. Although the basis of the Supreme Court's acceptance of the doctrine has not always been consistent, the forum doctrine appears to have nonetheless survived (at least until the amendatory act of 1958). *Moore's* at pages 723.2–.4.

In 1958, Congress amended the diversity of citizenship statute to read as follows:

A corporation shall be deemed a citizen of *any* state by which it has been incorporated and of the state where it has its principal place of business.

28 U.S.C. § 1332(c) (emphasis added). It is widely argued that the legislature's insertion of the words, "any state," in place of the preexisting words, "the state," indicates an intention to do away with the forum doctrine. Some of the legislative history behind the 1958 amendatory act supports this contention.[1]

The United States Supreme Court has not ruled on the status of the forum doctrine since the 1958 amendment to section 1332(c). In this void, substantial dispute has ensued regarding the doctrine's current applicability. *Hudak v. Port Authority Trans-Hudson Corp.*, 238 F.Supp. 790 (S.D.N.Y.1965), is considered the main proponent of the position that the forum doctrine does and was intended to survive the 1958 amendment.[2] Other cases taking the *Hudak* position include *Jaconski v. McCloskey & Company*, 167 F.Supp. 537

(E.D.Pa.1958), *Fitzgerald v. Southern Railway Company*, 176 F.Supp. 445 (D.C. N.Y.1959), *Majewski v. New York Central Railroad Company*, 227 F.Supp. 950 (W.D. Mich.1964), and *Kozikowski v. Delaware River Port Authority*, 397 F.Supp. 1115 (D.C.N.J.1975).

It appears, however, that the weight of authority goes in the other direction, supporting the position that the 1958 amendment effectively abolished the forum doctrine. Both the Third[3] and the Fifth[4] Circuits have adopted this position, while no circuits have upheld the forum doctrine since section 1332(c) was amended. Significantly, the New York District Court that took the lead in upholding the forum doctrine after the 1958 amendment in *Hudak* has since renounced that position in *Oslick v. The Port Authority of New York and New Jersey*, 83 F.R.D. 494 (S.D.N.Y.1979).[5] Other district court cases that follow this more prevalent view include *French v. Clinchfield Coal Company*, 407 F.Supp. 13 (D.C.Del.1976), *Evans-Hailey Company v. Crane Company*, 207 F.Supp. 193 (D.C. Tenn.1962), *Nayor v. Sears, Roebuck & Company*, 200 F.Supp. 319 (D.C.N.H.1961), *Stroup v. Pittsburgh & Lake Erie Railroad Company*, 186 F.Supp. 154 (D.C.Ohio 1960), *Diesing v. Vaughn Wood Products, Inc.*, 175 F.Supp. 460 (D.C.W.D.Va.1959), *Harker v. Kopp, et al.*, 172 F.Supp. 180 (N.D.Ill.1959).

---

1. The Senate Report on the bill enacted into law as an amendment to 28 U.S.C. § 1332(c) states: This fiction of stamping a corporation a citizen of the State of its incorporation has given rise to the evil whereby a local institution, engaged in a local business and in many cases locally owned, is enabled to bring its litigation into the Federal courts simply because it has obtained a corporate charter from another State.... This circumstance can hardly be considered fair because it gives the privilege of a choice of courts to a local corporation simply because it has a charter from another State, an advantage which another local corporation that obtained its charter in the home State does not have.... It (results in) a legal device not available to the individual citizen. Senate Report No. 1830, 85th Cong., 2nd Sess. 11 (1958); U.S. Code Congressional and Administrative News, 85th Cong. 2nd Sess., 1958, pp. 3099, 3101–3102.

2. The court in *Hudak* reasoned that if Congress intended to abolish the forum doctrine it would have used the words, *"every* state," instead of *"any* state." 238 F.Supp. at 792.

3. *Di Frischia v. New York Central Railroad Company*, 279 F.2d 141 (3d Cir.1960), *Lang v. Colonial Pipeline Company*, 383 F.2d 986 (3d Cir.1967), *Yancoskie v. Delaware River Port Authority*, 528 F.2d 722 (3d Cir.1975).

4. *Panalpina Welttransport GMBH v. Geosource, Inc.*, 764 F.2d 352 (5th Cir.1985).

5. It is interesting to note that the New York District Court also took the position of abolishing the forum doctrine in an opinion that preceded *Hudak, i.e., Moore-McCormack Lines, Inc. v. Ingalls Ship Building Corporation*, 194 F.Supp. 412 (S.D.N.Y.1961).

Two leading treatises on federal practice and procedure firmly adopt the view that the 1958 amendment repudiates the forum doctrine. 1 Moore's Federal Practice ¶ 0.78[2], p. 723.58 (1986), says:

> In short, it is our belief that the 1958 amendment to § 1332 has eliminated the pre-existing "forum" doctrine, and makes a corporation a citizen of every state in which it has been freely and actually incorporated (as well as of the state where it has its principal place of business). Consequently, diversity jurisdiction will not exist in a suit by or against a citizen of any of these states, irrespective of the court in which it is brought.

Moore's offers the following two reasons for its position: (1) to effectuate congressional intent to restrict rather than expand diversity jurisdiction of the federal courts, and (2) to eliminate the anomaly of the forum doctrine which was based on a now obsolete theory of corporate law. Moore's at page 723.57. Wright, Miller & Cooper's Federal Practice and Procedure reaches the same conclusion as Moore's for substantially the same reasons.[6] 13B Wright, Miller & Cooper, Federal Practice and Procedure § 3626, pages 655–58 (2d ed. 1984).

### Conclusion

Since the weight of authority clearly leans in the direction of abolishing the forum doctrine in light of the 1958 amendment to 28 U.S.C. § 1332(c) and, since the reasoning of the cases adopting that view is more persuasive to this court, that position is adopted.

Accordingly,

IT IS HEREBY ORDERED that defendant Stuart's motion to dismiss for lack of diversity jurisdiction is granted. Defendant Stuart's attorney is to prepare an appropriate order in accordance with this decision.

---

**6.** The three reasons relied upon by *Wright's* are: (1) the overriding purpose of the 1958 amendment was to limit diversity jurisdiction; (2) the forum doctrine defeats the express goal of section 1332(c), as recognized by *Hudak* itself, to establish dual citizenship for purposes of diversity in actions involving corporations incorporated in one state with their principal place of business in another; and (3) the underlying concept of the forum doctrine, that a corporation has no legal existence beyond the state in which it was created, has been rejected for a long time in the context of personal jurisdiction.