CRAIG TEST BORING CO., INC., Plaintiff,

v.

SAUDI ARABIAN AIRLINES CORP., Defendant.

Saudi Arabian Airlines Corp., Defendant and Third–Party Plaintiff,

v.

The Port Authority of New York and New Jersey, Third–Party Defendant.

The Port Authority of New York and New Jersey, Third Party Defendant and Fourth–Party Plaintiff,

v.

Craig Test Boring Co., Inc. American Risk Associates, Ltd. and Reliance Insurance Co., Fourth–Party Defendants.

Reliance Insurance Company, Fourth–Party Defendant and Fifth–Party plaintiff,

v.

Testwell Craig Test Boring Co., Inc. and Lexington Insurance Company, Fifth–Party Defendants.

No. 94 CIV. 861(CBM).

United States District Court, S.D. New York.

April 12, 2001.

Mathew Keating, Maffei, Maffei & Keating, Yonkers, NY, for Plaintiff and Fourth–Party Defendant Craig Test Boring.

Nicholas Giuliano, Claurisse C. Orozco, Waesche, Sheinbaum & O'Reagan, P.C., New York City, for Defendant and Second–Party Defendant Saudi Arabian Airlines.

Keith E. Harris, Milton H. Patcher, Attorney of Record for Port Authority of New York and New Jersey, New York City, for Third–Party Defendant and Fourth–Party Plaintiff Port Authority.

### MEMORANDUM OPINION AND ORDER

MOTLEY, District Judge.

This action was brought to determine the liability of the parties for a land-based collision between an airplane and a drilling rig. The court severed certain secondary insurance claims pending resolution of the negligence issues. A non-jury trial was held to resolve the negligence claims. The following are the court's findings of fact and conclusions of law regarding the negligence issues pursuant to Fed.R.Civ.P. 52(a).

### FINDINGS OF FACT

The action arises out of a taxiway collision that occurred when an airplane owned and operated by defendant Saudi Arabian Airlines ("Saudi") struck a drilling rig leased and operated by plaintiff Craig Test Boring Company ("Craig"). The accident occurred on May 18, 1993, at approximately 1:00 p.m., at the edge of a taxiway at John F. Kennedy International Airport ("JFK"), owned and operated by third-party defendant Port Authority.

David Osuch ("Osuch"), a driller working for Craig, was operating the drilling rig on the day of the accident. As required by Craig's contract with Port Authority, Osuch was accompanied by an agent of the Port Authority, Mazen Oudeh ("Oudeh") to the drilling site. Osuch was also accompanied by a helper, Wayne Michaels ("Michaels"), an employee of Craig. Oudeh instructed Osuch to set up the drilling rig at the boring hole on a median located at site AP–42 next to a taxiway. When drilling next to an active taxiway, procedure required that the Port Authority agent accompanying the driller obtain permission to drill at the particular site. The Port Authority would then close the

taxiway in question. In this case Oudeh told Osuch that he had obtained the required permission to drill at this median; however, in reality, Oudeh had not requested permission to drill at the site in question.

No warning cones or lights were placed at the drilling site or on the runway. Although the contract between Craig and the Port Authority calls for Craig to place cones and flags on the drill rig, Ousch testified at trial that it was Craig's practice to set out warning cones and flags only if Port Authority instructed the driller to do so or occasionally for his own safety. In this case, Oudeh, the Port Authority's agent, did not instruct Ousch to set out cones or flags and, as Ousch believed the runway was closed, he did not feel cones and flags were necessary.

Osuch raised the drill rig boom and began to drill. Shortly thereafter, Osuch saw a plane on the next taxiway and asked Oudeh again if they had permission to be there. Oudeh again assured Osuch that they did have permission. Osuch then noticed defendant Saudi's 747 airplane ("the 747") approaching on the taxiway over an elevated bridge, approximately 200 yards down the taxiway from the drill rig. Witnesses estimate that the plane was traveling between 5 and 20 miles per hour. As Oudeh and Michaels ran towards a service road in the opposite direction from the taxiway, Osuch walked toward the approaching 747, waving his hands above his head because it appeared to Osuch that the 747's wing would not clear the drill rig boom. Although he did not remember at trial exactly what he had done as the 747 approached, Oudeh testified in his deposition that he was also waving at the 747 and pointing to the rig. The 747 did not stop and, indeed, hit the drill rig boom damaging both the drill rig and the 747.

Roger Major ("Major"), a certified mechanic working for Saudi, was in control of the 747 at the time of the accident. Major was accompanied by Michael MacLaughlin and William Matturi, also employed by Saudi, in the cockpit. Major was moving the 747 to the Delta cargo building 67 at the airport via the taxiway in question. Major admits that he saw the drill rig boom operating next to the taxiway before he drove the plane onto the elevated bridge. He concluded that he could have safely stopped the 747 before hitting the rig. However, Major believed that the aircraft wing would clear the rig by passing both over and to the left of the rig boom. He asserts that he slowed down, but he did not attempt to stop. Although Major was accompanied in the cockpit by two other mechanics, he did not have one of them observe the wingtip from the side window, as called for by Saudi's manual regarding operation of the aircraft. Major based his estimation, in part, on the fact that there were no warning cones or flags about the rig or on the taxiway. He also concluded that he would clear the rig because he had been cleared by JFK ground control to use the taxiway. Major assumed that the taxiway would have been closed, as is required by Port Authority, if activity was occurring close enough to the taxiway to cause a hazard to airplanes. Major testified that he saw Oudeh, Osuch and Michaels by the rig. He also saw Osuch walking toward him waving his arm but believed that Osuch was beckoning him forward, indicating that the 747's wing would clear the rig.

## CONCLUSIONS OF LAW

### I. Jurisdiction and Applicable Law

The following bases of jurisdiction have been stipulated to by the parties in their joint pre-trial order: The court has original alienage jurisdiction under 28 U.S.C.

§ 1330, as Saudi was, at the time this action was commenced, wholly-owned by the Kingdom of Saudi Arabia with its principal place of business in the Kingdom of Saudi Arabia.

In addition, the court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. Craig is incorporated in New Jersey and maintains its principal place of business in New Jersey. The Port Authority is a citizen of New York and New Jersey. The amount in controversy exceeds $75,000. There is complete diversity of citizenship between plaintiff Craig and defendant Saudi. There is also complete diversity between defendant Saudi and third-party defendant Port Authority.

The parties have also stipulated that New York State law applies to the issues of liability and damages. *See Koninklijke v. United Technologies Corp.*, 610 F.2d 1052, 1055 (2d Cir.1979).

## II. Negligence Standard

■ To prevail on a negligence claim, a plaintiff must establish, by a preponderance of the credible evidence, the following elements under New York law: (1) that defendant owed plaintiff a duty of care, (2) that defendant breached this duty of care, (3) that defendant's breach proximately resulted in damage to plaintiff. *See, e.g., Akins v. Glens Falls City Sch. Dist.*, 53 N.Y.2d 325, 333, 424 N.E.2d 531, 535, 441 N.Y.S.2d 644, 648 (1981) (citing W. Page Keeton et al., Prosser & Keeton on the Law of Torts § 30, at 164–65 (5th ed.1984)).

■ The definition of a duty of care by one member of society to another is determined by the court as a matter of law. *See, e.g., Palka v. Servicemaster Mgmt. Servs. Corp.*, 83 N.Y.2d 579, 585, 634 N.E.2d 189, 192, 611 N.Y.S.2d 817, 820 (1994); *Waters v. New York City Housing Auth.*, 69 N.Y.2d 225, 229, 505 N.E.2d 922, 923, 513 N.Y.S.2d 356, 358 (1987).

> [W]henever one person is by circumstances placed in such a position with regard to another that everyone of ordinary sense who did think would at once recognize that if he did not use ordinary care and skill in his own conduct with regard to the circumstances he would cause danger of injury to the person or property of the other a duty arises to use ordinary care and skill to avoid such danger.

*Havas v. Victory Paper Stock Co.*, 49 N.Y.2d 381, 386, 402 N.E.2d 1136, 1138, 426 N.Y.S.2d 233, 236 (1980) (quoting *Heaven v. Prender*, 11 Q.B.D. 503, 509 (1883)).

■ A defendant is negligent when defendant breaches the duty of care imposed by law by engaging in conduct posing an unreasonable risk of harm to others. The primary factors to be taken into account in assessing the reasonableness of a defendant's conduct are:

> the foreseeable likelihood that it will result in harm, the foreseeable severity of the harm that may ensue and the burden that would be borne by the actor and others if the actor takes precautions that eliminate or reduce the possibility of harm.

*Palka v. Servicemaster Mgmt. Servs. Corp.*, 83 N.Y.2d 579, 586, 634 N.E.2d 189, 193, 611 N.Y.S.2d 817, 821 (1994); *see also Strauss v. Belle Realty Co.*, 65 N.Y.2d 399, 402, 482 N.E.2d 34, 36, 492 N.Y.S.2d 555, 557 (1985); *Pulka v. Edelman*, 40 N.Y.2d 781, 785, 358 N.E.2d 1019, 1022, 390 N.Y.S.2d 393, 396 (1976).

■ The third element of a negligence claim under New York law is "proximate cause." To satisfy this element, a plaintiff must establish that defendant's negligence was a substantial foreseeable factor in bringing about his or her injury.

## III. Comparative Negligence Standard

■ When two or more of the parties involved in accident have contributed through their fault to the accident, New York law applies a comparative negligence standard. *In Prudential Lines, Inc. v. McAllister Brothers, Inc.*, 801 F.2d 616, 621 (2d Cir.1986), the Second Circuit explained comparative negligence:

> [R]egardless of which party had the last clear chance to avoid that accident, 'liability for such damage is to be allocated among the parties proportionately to the comparative degree of their fault, and that liability for such damages is to be allocated equally only when the parties are equally at fault or when it is not possible fairly to measure the comparative degree of their fault.'

*Id.* (quoting *United States v. Reliable Transfer*, 421 U.S. 397, 411, 95 S.Ct. 1708, 1715, 44 L.Ed.2d 251 (1975)). As such, the "last clear chance" doctrine, which allowed complete recovery by a plaintiff, given certain circumstances, who would otherwise have been barred by his or her contributory negligence, is now obsolete in New York. *See Dominguez v. Manhattan & Bronx Surface Transit Operating Authority*, 46 N.Y.2d 528, 388 N.E.2d 1221, 415 N.Y.S.2d 634 (1979); *Romeo v. DeGennaro*, 255 A.D.2d 208, 208, 680 N.Y.S.2d 235, 236 (1998).

## IV. Liability

The court now proceeds to examine the liability of each of the three parties present at the accident.

### A. Saudi Arabian Airlines

According to Federal Aviation Regulation 14 C.F.R. § 91.3, Major, who was performing the duties of a pilot for Saudi, was fully responsible as a matter of law for the safety of his aircraft. "The pilot in command of an aircraft is directly responsible for, and is the final authority as to, the operation of that aircraft." 14 C.F.R. § 91.3(a). Furthermore, aside from the common law duty to use ordinary care and skill in the operation of the aircraft, Major was forbidden by 14 C.F.R. § 91.13(a) to "operate an aircraft in a careless or reckless manner so as to endanger the life or property of another." *Id.* Finally, in operating the aircraft, Major was required by 14 C.F.R. § 91.9 to "comply with the operating limitations specified in the approved Airplane or Rotorcraft Flight Manual." *Id.*

■ Major breached his duty to exercise ordinary skill and care in navigating the aircraft. A reasonable person, upon observing a potential hazard such as the rig on the median, would have stopped the plane to inquire further. Even if Major was not alerted to the fact that the plane might not clear the rig at the time he first observed the rig due to the lack of warning devices, he should have taken warning from the fact that two of the pedestrians on the ground were fleeing for safety, while the other was approaching and gesturing at him. Major says that he did not think Ousch was signaling him to stop because Ousch was not using standard aircraft control hand signals. However, the lack of standard hand signals in itself should have alerted Major to the fact that this was not a standard situation. Furthermore, Major admits in his deposition testimony that his familiarity with the dimensions of the 747 alerted him to the fact that if the 747 cleared the rig it would be a "tight squeeze." Under these circumstances Major could have: (1) stopped the plane, (2) called the control tower to inquire about the rig and/or (3) put a copilot in a position to observe the wingtip as the 747 passed (as required by Saudi's Manual). Major did not exercise any of these options as a reasonable person would;

rather, he continued on course, ignoring the potential hazard. This was careless and a breach of his duty to use ordinary care.

Although as described above, Major was in large part responsible for the accident, as discussed below, the Port Authority's and Craig's negligence also contributed to the accident. Therefore, the court now finds that Saudi is fifty percent responsible for the causation of the accident.

### B. Port Authority

■ The Port Authority's agent, Oudeh, breached his duty to oversee the drilling with ordinary care and skill. Oudeh negligently failed to obtain the permission required to drill at site AP–42 and arrange for the taxiway to be closed. Oudeh complied this negligence by lying to Ousch and telling him that he had permission to drill at the site. The accident which ensued was exactly the sort of event a reasonable person would foresee as ensuing from the failure to close the taxiway. Major's negligence was a significant contributing cause of the accident. Major's negligence was foreseeable in light of the circumstances. It was exactly the sort of conduct that closing the runway was designed to prevent. "When the intervening . . . act of another is itself the foreseeable harm that shapes the duty imposed, the defendant who fails to guard against such conduct will not be relieved of liability when that act occurs." *Kush v. City of Buffalo*, 59 N.Y.2d 26, 33, 449 N.E.2d 725, 729, 462 N.Y.S.2d 831, 835 (1983). The court now finds that the Port Authority's failure to close the runway was forty-nine percent responsible for the accident.

### C. Craig Test Boring

Saudi claims that Craig is at least partially responsible for the accident because it failed to display warning flags on the drilling rig. Saudi claims that Craig was required to provide such flags based on the following contractual provision between Craig and the Port Authority:

B. Borings at Airports. . . . 6. The Contractor [Craig] shall furnish aircraft warning flags, colored orange and white, in two sizes, one size two feet by three feet for hand use, and one size three feet by five feet for truck use, each mounted on a staff not less than eight feet in length. Each separate group of individuals shall display a flag which shall be maintained vertical at all times. Each truck or other piece of equipment of the Contractor's shall have attached to it, in a vertical and clearly visible position, a warning flag of the larger size.

(Saudi Ex. B).

Although Saudi is not a party to the contract between Craig and the Port Authority, the Court of Appeals of New York held in *Palka v. Servicemaster Management Services Corp.*, 83 N.Y.2d 579, 585, 634 N.E.2d 189, 192, 611 N.Y.S.2d 817, 820 (1994), that such a contractual duty to provide safety measures can be extended to third parties "whenever one person is by circumstances placed in such a position with regard to another that every one of ordinary sense who did think would at once recognize that if he [or she] did not use ordinary care and skill in his [or her] own conduct with regard to the [performance of the contract] he [or she] would cause danger of injury to the person or property of the other." *Id.* (citations omitted).

■ In this case, the contract specifically refers to *aircraft warning* flags to be provided when Craig drilled at any airport site. Any person of ordinary sense would realize that the flags were intended to warn aircraft of the danger of potential collisions between Craig's drilling equipment and aircraft. Therefore, Saudi was a

foreseeable beneficiary of the contract and Craig had a duty to Saudi to provide flags on its drilling equipment.

Craig argues that Osuch was not negligent in performing his contractual duties because Osuch did not know that he was drilling next to an active taxiway. Certainly, as discussed above, the Port Authority was negligent in not closing the runway, not alerting Osuch to the fact the taxiway was open and not providing warning lights and cones. However, the Port Authority's negligence does not excuse Craig from its contractual duties to provide warning flags at all times while drilling at the airport. A reasonable person would conclude that warning flags were required in order to prevent accidents, even on a closed runway. It is foreseeable that a rogue vehicle might enter a closed runway by mistake or that the Port Authority would fail to properly notify a pilot that the runway was closed. Thus, even had Oudeh arranged to have the runway closed, the danger of a collision was foreseeable. The failure to anticipate the foreseeable negligent conduct of the pilot or the Port Authority against which the warning flags were meant to protect was in itself negligent. *See, e.g., Palka,* at 585, 611 N.Y.S.2d 817, 634 N.E.2d 189. Therefore, Craig was negligent in failing to provide warning flags and, to the extent that the missing flags were responsible for the accident, Craig is liable.

Based on the evidence heard at trial, the absence of flags on the rig was a very minor cause of the accident. As discussed above, Major testified at trial that he assumed that he could clear the rig mainly because the runway had not been closed down and there were none of the warning cones and lights that the Port Authority would normally place to warn of a hazard. In addition, he cited the absence of warning flags or lights on the rig itself. How-

ever, there is little evidence that a flag marking the top of the rig would have caused Major to stop the 747. Major, as discussed above, had ample evidence that the rig might cause a hazard even without warning flags and failed to stop or take the proper precautions. Further, a flag marking the height of the rig could not have aided Major in navigating past the rig safely since he did not have someone positioned to observe the wingtip. Therefore, the court finds that Craig's failure to furnish warning flags on its drilling equipment is one percent responsible for the accident.

## V. Damages

"[I]t must be demonstrated with certainty that ... damages have been caused by the breach and ... the alleged loss must be capable of proof with reasonable certainty. In other words, the damages may not be merely speculative, possible or imaginary, but must be reasonably certain and directly traceable to the breach, not remote or the result of other intervening causes." *Travellers Int'l, A.G. v. Trans World Airlines, Inc.,* 41 F.3d 1570, 1577 (2d Cir.1994); *Kenford Co. v. County of Erie,* 67 N.Y.2d 257, 502 N.Y.S.2d 131, 132, 493 N.E.2d 234, 235 (1986) (per curiam) (citations omitted); *Trademark Research Corp. v. Maxwell Online, Inc.,* 995 F.2d 326, 332–34 (2d Cir.1993).

A "plaintiff has the burden of establishing damages ... with reasonable certainty, such as by submitting ... relevant documentation" *See Poturniak v. Rupcic,* 232 A.D.2d 541, 542, 648 N.Y.S.2d 668 (1996); *Papa v. City of New York,* 194 A.D.2d 527, 598 N.Y.S.2d 558 (1993). Evidence in the form of bills and testimony is sufficient to support an award of damages. In addition, in New York, absent a conclusive showing by defendant that plaintiff suffered no actual damages, "[r]ental value

may provide a measure of loss of use damages even though a substitute vehicle has not actually been hired." *Koninklijke v. United Technologies Corp.*, 610 F.2d 1052, 1055 (2d Cir.1979).

### A. Damage to Saudi's Jet

 Saudi established at trial that the 747 was damaged in the accident and out of service for three days while being repaired. Saudi further established that the cost of repair to the 747 was $85,033.39. Saudi did not rent a replacement airplane to cover the flights the 747 would have made during the 3 days the 747 was out of service; rather, Saudi rearranged the schedule of its fleet of aircraft to compensate for the missing 747. However, Saudi did present evidence that the cost of renting a similar 747 would have been $6,300 per hour at the time and place of the accident for a total of $191,079 to compensate for the flights that 747 would have flown. As explained above, the rental value of a replacement vehicle can provide a measure of damages, even where no replacement has actually been rented. *See Koninklijke*, 610 F.2d at 1055. Defendant has not made a convincing showing that Saudi suffered no damage. Rather, the facts in this case are similar to those in *Koninklijke*, in which the plaintiff was awarded the rental value of an airplane, although it had not actually rented a replacement.

For the foregoing reasons, the court finds that Saudi suffered damages in the amount of $85,033.39 for repair and $191,079 for the loss of use of the 747.

### B. Damage to Craig's rig

Craig has established through the presentation of invoices that in addition to continuing to lease the first rig, Craig had to lease a second drilling rig at a cost of $12,375 to replace the damaged rig, in order to complete its contracts. Craig's president, Frank Gordon Craig, testified that the bill was paid partially in cash and partially in services. Defendants contested whether Craig had actually paid the invoices, noting the close relationship between Craig Test Boring Co. and Testwell Craig Test Boring Co. ("Testwell"), the leasing company which owns both rigs. However, the parties do not dispute that Craig and Testwell are separate corporate individuals, owned and operated by separate persons. Craig Test has produced sufficient evidence in the form of bills and testimony to show that it was required to rent a second rig as a result of the accident and owed Testwell the invoiced amount. *See Canusa Corp. v. A & R Lobosco, Inc.*, 986 F.Supp. 723; *Reisterstown Plaza v. General Nutrition Center*, 89 Md.App. 232, 597 A.2d 1049. Defendants have not produced any evidence to show that the bill was not owed or paid.

For the foregoing reasons, the court finds that Craig suffered damage in the amount of $12,375.

### C. Pre Judgment Interest

 Under New York law, a plaintiff is entitled to recover pre-judgment interest as a matter of right when a defendant's "act or omission depriv[es] or otherwise interfer[es] with title to, or possession or enjoyment of, property." N.Y. C.P.L.R. § 5001(a); *Hydro Investors, Inc. v. Trafalgar Power*, 227 F.3d 8, 22 (2d Cir.2000). Therefore Saudi and Craig are entitled to interest accruing from the date of the accident and ceasing as of the date of this judgment.

### CONCLUSION

For the reasons stated above, the court finds that Saudi is liable to Craig for fifty percent of Craig's damages plus interest. Port Authority is liable to Craig for forty-

nine percent of Craig's damages plus interest. Port Authority is liable to Saudi for forty-nine percent of Saudi's damages plus interest. Finally, Craig is liable to Saudi for one percent of Saudi's damages plus interest.

**SO ORDERED**