**Albertino DA CRUZ and Ermelinda Da Cruz, Plaintiffs,**

v.

**TOWMASTERS OF NEW JERSEY, INC., Richard Bittone and Richard E. Bittone, Jr., Defendants.**

**Towmasters of New Jersey, Inc. and Richard E. Bittone, Jr., Third–Party Plaintiffs,**

v.

**The Port Authority of New York and New Jersey, Third–Party Defendant.**

**No. 00–CV–6480(ILG).**

United States District Court, E.D. New York.

June 17, 2003.

Fredric R. Zarkin, Esq., Loft & Zarkin, New York City, for plaintiffs.

Bruce A. Lawrence, Esq., Brooklyn, NY, for defendants.

### MEMORANDUM & ORDER

GLASSER, District Judge.

### SUMMARY

Plaintiffs Albertino and Ermelinda Da Cruz move to amend their complaint, pursu-

ant to Federal Rule of Civil Procedure 15 and New York Civil Practice Laws and Rules 203(f) and 3025(b), to add claims against the Port Authority of New York and New Jersey (the "Port Authority") arising out of an accident on the Goethals Bridge. Until now, the Port Authority has defended only against third-party claims brought by the defendants initially named in this action. Plaintiffs claim that recently discovered evidence (obtained as a result of discovery) implicates the Port Authority under New York's Scaffold Law.

The Port Authority contends that the claims are now time-barred and should not relate back to the filing of the original complaint. Thus, the Port Authority argues, the amendment would be futile. As explained below, however, plaintiffs are correct that their claims relate back to the date the Port Authority was impleaded and therefore the amendment would not be futile. However, because joining the Port Authority as a defendant would deprive this Court of jurisdiction to hear the case, the Court must determine pursuant to 28 U.S.C. § 1447(e) whether to permit joinder and then remand the case to state court or to deny joinder.

For the reasons stated below, plaintiffs' motion is granted and this action will be remanded to state court.

### BACKGROUND

■ According to the proposed amended Complaint,[1] the Port Authority owns the Goethals Bridge and its access ramps. On June 9, 2000, Mr. Da Cruz was working atop a scaffold on the Goethals Bridge, which connects Staten Island and New Jersey. (The Port Authority had contracted with Ahern Painting Contractors, Mr. Da Cruz's employer, to do painting and maintenance work on part of that bridge.) On that day, defendant Richard Bittone, Jr. drove a trac-

tor trailer on an underpass of the Goethals Bridge and struck a section of the bridge and a steel cable directly outside of plaintiff's work area. The impact caused the scaffold to collapse, and Mr. Da Cruz suffered numerous injuries from the resulting fall. An accident report prepared by the Port Authority at the time indicates that the tractor trailer was over the maximum height allowed on the bridge.

Pursuant to New York and New Jersey laws, in order to bring an action against the Port Authority a person must first serve a Notice of Claim upon the Port Authority within one year from the date the cause of action accrues. On August 28, 2000, plaintiffs served a Notice of Claim upon the Port Authority. On September 28, 2000, plaintiffs filed a complaint in Supreme Court, Kings County, naming as defendants the driver of the truck (Bittone), another person named Richard Bittone (alleged to be the owner of the tractor trailer), and the driver's employer Towmasters of New Jersey, Inc. (which also is alleged to own the tractor trailer). The initial complaint did not name the Port Authority as a defendant.[2]

Defendants (all residents of New Jersey) removed the action from state court on the basis of diversity of citizenship. Defendants Towmasters and Bittone then filed a third-party complaint on March 20, 2001 against the Port Authority alleging that if plaintiffs were in fact injured, the injury was the fault of the Port Authority. Subsequently, the deposition of Mr. Da Cruz's coworker Renato Martins in October 2002 revealed that both he and Mr. Da Cruz routinely did not wear their safety harnesses and that the Port Authority knew of and tolerated these unsafe conditions. Shortly after Martins's deposition, plaintiffs brought this motion.

---

1. For purposes of this motion the allegations in the proposed Complaint will be taken as true and all inferences will be drawn in plaintiffs' favor. *See Coney Island Resorts, Inc. v. Giuliani,* 103 F.Supp.2d 645, 656 n. 8 (E.D.N.Y.2000).

2. According to plaintiffs, the decision as to who should be named as a defendant in the action was based on an initial investigation "by a prior law firm" that indicated that Mr. Da Cruz was

wearing appropriate safety equipment at the time of the accident. (Melcer Aff., ¶ 20.) Although the notice of claim against the Port Authority was filed by Loft & Zarkin, who continue to represent plaintiffs to this day, at oral argument plaintiffs explained that a different law firm had conducted a factual investigation into the injury in June 2000.

## ANALYSIS

### Standard for Granting Leave to Amend a Complaint

■ The decision whether to grant or deny a motion for leave to amend a complaint is within the sound discretion of the Court, *see, e.g., O'Hara v. Weeks Marine, Inc.,* 294 F.3d 55, 68 (2d Cir.2002), though leave to amend should be "freely given when justice so requires." Fed.R.Civ.P. 15(a). In determining whether leave to amend should be granted, the Court should consider the futility of the proposed amendment. *See, e.g., O'Hara,* 294 F.3d at 69. "An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals,* 282 F.3d 83, 88 (2d Cir.2002).

### I. Conditions Precedent for Actions against the Port Authority

At common law, the Port Authority enjoyed sovereign immunity from suit. *Trippe v. Port of N.Y. Auth.,* 14 N.Y.2d 119, 123, 249 N.Y.S.2d 409, 411, 198 N.E.2d 585, 586 (1964). In 1950, both New York and New Jersey passed legislation waiving the Port Authority's immunity, *see* N.Y. Unconsol. L. § 7101 and N.J.S.A. § 32:1–157, but conditioned that waiver as follows:

> The foregoing consent is granted upon the condition that any suit, action or proceeding prosecuted or maintained under this act shall be commenced *within one year* after the cause of action therefor shall have accrued, and upon the further condition that in the case of any suit, action or proceeding for the recovery or payment of money, prosecuted or maintained under this act, a notice of claim shall have been served upon the Port Authority by or on behalf of the plaintiff or plaintiffs at least sixty days before such suit, action or proceeding is commenced. . . .

N.Y. Unconsol. L. § 7107; N.J.S.A. § 32:1–163. Section 7107 does not merely create a statute of limitations, but imposes a " 'condition precedent to the maintenance of the action at all.' " *Yonkers Contracting Co., Inc. v. Port Authority Trans–Hudson Corp.,* 93 N.Y.2d 375, 379, 690 N.Y.S.2d 512, 515, 712 N.E.2d 678, 681 (1999) (quoting *Hill v. Board of Supervisors,* 119 N.Y. 344, 347, 23 N.E. 921 (1890)).

■ It is uncontested that plaintiffs satisfied the condition that a notice of claim be served timely. The Port Authority contends, however, that this action was not commenced within one year after the accident. Additionally, the Port Authority contends that even if plaintiffs' claims were permitted to relate back, they would relate back to the initial filing of this complaint, which occurred only 31 days after the notice of claim was served. Thus, the questions posed initially by this motion are (1) whether plaintiffs' claims may relate back to within that one-year period based on the fact that the third-party action was in fact commenced against the Port Authority within a year, and (2) whether the notice of claim was served at least sixty days "before such suit, action or proceeding [was] commenced."

### A. The Relation Back Doctrine Applies under State Law

Under the Federal Rules of Civil Procedure, an amendment of a pleading relates back to the date of the original pleading when

(1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or

(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, or

(3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) had received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Fed.R.Civ.P. 15(c). Traditionally, courts have interpreted the Federal Rules to prohibit the relation back of claims asserted by a plaintiff directly against a third-party defendant. *See Monarch Indus. Corp. v. American Motorists Ins. Co.*, 276 F.Supp. 972, 981 (S.D.N.Y.1967); *but see Project Hope v. M/V Ibn Sina*, 250 F.3d 67, 76–77 (2d Cir.2001) ("[W]e hold that formal amendment of a plaintiff's complaint asserting causes of action against a party impleaded under Rule 14(a) is unnecessary if the third-party is effectively on notice that it will be held liable on the plaintiff's claims and the two proceed against one another in an adverse manner.").[3]

However, Rule 15 was amended in 1991 to make explicit in paragraph (c)(1) that where state law governs the statute of limitations, relation back may apply if it would be permissible under state law. *See* Fed.R.Civ.P. 15(c)(1) and Adv. Comm. Notes to 1991 Amend.; *Bryan v. Associated Container Transp.*, 837 F.Supp. 633, 643 (D.N.J.1993) (collecting cases post–1991 amendment for this proposition). Therefore, the first question requires examination of state law regarding relation back, as set forth in CPLR 203(f).[4]

■ Under New York law, the general rule is that where the third-party complaint and proposed amended complaint are based on the same transaction or occurrence, "an amendment of the complaint may be permitted, in the court's discretion, and a direct claim asserted against the third-party defendant, which for the purposes of computing the Statute of Limitations period, relates back to the date of service of the third-party complaint." *Duffy v. Horton Memorial Hospital*, 66 N.Y.2d 473, 478, 497 N.Y.S.2d 890, 893, 488 N.E.2d 820, 823 (1985). The facts in *Duffy* are remarkably similar to those present in this case. In *Duffy*, husband and wife plaintiffs initially alleged that defendants had failed to properly diagnose the husband's lung cancer. Shortly after the husband died during the pendency of the action, defendants timely impleaded the family physician who had treated the husband both before and after an apparently relevant hospital visit. *Id.* at 475, 497 N.Y.S.2d at 891–92, 488 N.E.2d at 821. After the family physician was deposed, plaintiffs sought to amend the complaint to name him as a defendant and to have the amended complaint relate back to the original complaint pursuant to CPLR 203(e)[5] since the statute of limitations had run as against him. *Id.* at 475, 497 N.Y.S.2d at 892, 488 N.E.2d at 821–22. Although the facts make it obvious that plaintiffs were not mistaken about the identity of their family physician, the Court of Appeals held that by virtue of the timely impleader, plaintiffs could add the family physician as a defendant despite the expiration of the statute of limitations.

The Port Authority contends, however, that a different rule should apply given that the strict nature of the conditions on suit placed by § 7107 generally prohibits the application of other rules related to the timeliness of claims, such as tolling provisions. For example, under CPLR 205(a), if a plaintiff's original claim is dismissed without prejudice, a plaintiff may file a new action within six months of the dismissal even if the stat-

---

**3.** The facts in *Project Hope* are somewhat unique, in that the impleaded third-party defendant on its own initiative filed an answer to the plaintiff's complaint (which had not named the impleaded third-party as a defendant) and filed pre-trial motions seeking to dismiss the plaintiff's complaint. 270 F.3d at 76. Those facts made it quite simple to find that plaintiff and third-party defendant had for all practical purposes been adverse throughout the litigation. Additionally, the question of the statute of limitations was not addressed by the circuit court.

**4.** Plaintiffs expressly disavow 15(c)(3) as a basis for relation back (Pl. Reply Mem. at 4–5), nor could it be used in this case, since Rule 15(c)(3) requires that a mistake was made concerning the

identity of the proper party. *See Barrow v. Wethersfield Police Dep't*, 66 F.3d 466 (2d Cir.1995), *modified*, 74 F.3d 1366 (2d Cir.1996).

Similarly, courts hold that a new party cannot be added to a complaint solely under Rule 15(c)(2), given that subparagraph (3) permits the addition of parties and incorporates subparagraph (2) in its entirety. *See Bass v. World Wrestling Federation Entertainment, Inc.*, 129 F.Supp.2d 491, 507 n. 12 (E.D.N.Y.2001); *accord Olin v. George E. Logue, Inc.*, 119 F.Supp.2d 464, 472 (M.D.Pa.2000). Thus, to the extent that plaintiffs seek to rely upon Rule 15(c)(2) they are mistaken.

**5.** CPLR 203(e) was redesignated CPLR 203(f) in 1992.

ute of limitations has expired in the interim. Despite this general toll of the statute of limitations, a plaintiff suing the Port Authority will be barred after the initial claim is dismissed because 205(a) only tolls statutes of limitation and does not affect cases where "the statutory time limit on bringing suit ... is itself a condition precedent to the existence of the right of action ...." *Yonkers Contracting,* 93 N.Y.2d at 379, 690 N.Y.S.2d at 515, 712 N.E.2d at 680.

Similarly, at least one state court has held that the condition precedent in § 7107 trumps the sixty-day toll provided by CPLR 203(b)(5), which permits a complaint to be deemed commenced from the time the summons is delivered to the sheriff or county clerk for service if service is completed within sixty days of the expiration of the statute of limitations. *Savino v. Demiglia,* 133 A.D.2d 389, 390, 519 N.Y.S.2d 384, 385 (2d Dep't 1987); *cf. Cohen v. Pearl River Union Free School Dist.,* 51 N.Y.2d 256, 264, 434 N.Y.S.2d 138, 142, 414 N.E.2d 639, 644 (1980). The Port Authority contends that a similar rule should apply to the relation back doctrine.

Neither party directs the court to any case analyzing what impact the conditions precedent of § 7107 (or for that matter, any similar statute) has upon the relation back doctrine set forth in CPLR 203(f).[6] Nor does an independent review of the cases reveal whether such rules for the tolling of statutes of limitations apply with the same force to the relation back rule.

In this case, the first condition that must be satisfied is that the "suit, action or proceeding" against the Port Authority "be commenced within one year after the cause of action therefore shall have accrued." N.Y. Unconsol. L. § 7107. The operative language of the condition precedent speaks to the existence of an action in and of itself, not to the specific claims of certain parties. (This is unlike the requirements for the notice of claim, set forth at N.Y. Unconsol. L. § 7108, which explicitly requires the claimant to identify the persons alleged to be injured.) As a technical matter, the action against the Port Authority thus was commenced on March 20, 2001, within one year after the accident. The relation back rule as defined in *Duffy* permits a court to relate back an amendment of a claim by a plaintiff against a third-party defendant "to the date of service of the third-party complaint." 66 N.Y.2d at 478, 497 N.Y.S.2d at 893, 488 N.E.2d at 823.

Thus, plaintiffs may assert these claims directly against the Port Authority without running afoul of the one-year requirement.

### B. The Sixty–Day Notice Requirement

The Port Authority also argues that if CPLR 203(f) (as interpreted by *Duffy*) is applied in this instance, it will still not avail plaintiff, because Rule 15 (which incorporates the state rule and makes it applicable in this action) relates the claim back to the filing of the *initial complaint,* in this case September 28, 2000. Fed.R.Civ.P. 15(c). Here, the notice of claim was filed less than sixty days before the complaint was served. Had the claim against the Port Authority been included in that initial complaint, the claim would surely have been dismissed for failure to satisfy the sixty-day waiting period. *See Lyons v. Port Authority of New York and New Jersey,* 228 A.D.2d 250, 251, 643 N.Y.S.2d 571, 571 (1st Dep't 1996); *Giannone v. Port Authority of New York and New Jersey,* 127 A.D.2d 818, 819, 511 N.Y.S.2d 940, 941 (2d Dep't 1987).

The state and federal rules, however, relate back to different operative events. Under CPLR 203(f) and *Duffy,* a state court would deem the claim to relate back only to the time when the defendant was impleaded,

---

**6.** The only case cited by plaintiffs notes in passing that the six-month toll in CPLR 205 should be applied to claims against the Port Authority since it would otherwise be duplicative to require plaintiffs to file yet another action that would in any event be permitted to relate back under CPLR 203(f). *See Recreation World, Inc. v. Port Authority of New York and New Jersey,* 1998 WL 107362, at *7 (S.D.N.Y. Mar.9, 1998). However, the very next year the New York Court of Appeals made it clear that CPLR 205 was not applicable to claims not brought within one year of the accrual of the cause of action. *Yonkers Contracting, supra.* Given that the comments about CPLR 203(f) were made in passing and that the basis for the decision was repudiated the next year, this dicta in *Recreation World* is not persuasive.

March 20, 2001, and thus the relation back would have no impact on the sixty-day waiting period. Although plaintiffs do not specifically address this issue, they argue generally that state law should govern the relation back doctrine. Their argument would find support in the Advisory Committee Notes issued when Rule 15(c)(1) was adopted, which state that "[w]hatever may be the controlling body of limitations law, if that law affords a more forgiving principle of relation back than the one provided in this rule, it should be available to save the claim." Fed.R.Civ.P. 15, Adv. Comm. Notes to 1991 Amend. Given the admonition of the Advisory Committee, and given that the three conditions precedent in § 7107 were satisfied to the letter, namely (i) the timely filing of the notice of claim, (ii) the institution of an action against the Port Authority based on the claim more than 60 days thereafter (iii) but less than one year after the injury occurred, the amendment proposed by the plaintiffs should be deemed satisfactory for purposes of § 7107.

## II. Effect of Adding Port Authority to this Court's Jurisdiction

Since relation back is permitted, the Court must address a thornier question. Prior to oral argument, the Court requested that the parties additionally brief the question of whether adding the Port Authority would eliminate this Court's subject matter jurisdiction, and if so, whether the Court should deny joinder in order to preserve its jurisdiction under 28 U.S.C. § 1447(e).

■ The action is presently before the court solely pursuant to complete diversity of citizenship between the parties.[7] The Port Authority, on the other hand, is an entity created in 1921 by an Interstate Compact between New York and New Jersey to develop ports and transportation within the two states. See N.Y. Unconsol. L. § 6401 et seq.; N.J. Stat. Ann. § 32:1–1 et seq.; 42 Stat. 174 (1921) (giving Congressional consent to interstate compact). These statutes provide that the Port Authority "shall be a body corporate and politic, having the powers and jurisdiction hereinafter enumerated ...." N.Y. Unconsol. L. § 6404; N.J. Stat. Ann. § 32:1–4. A corporation is "deemed a citizen of any State by which it has been incorporated ...." 28 U.S.C. § 1332(c)(1). Because the Port Authority is organized as a "body corporate" under the laws of both New Jersey and New York, federal courts almost uniformly consider it to be a citizen of both states for purposes of diversity jurisdiction. See Craig Test Boring Co., Inc. v. Saudi Arabian Airlines Corp., 138 F.Supp.2d 553, 557 (S.D.N.Y. 2001); Costa v. Port Authority of N.Y., 1996 WL 143908, at *3 (S.D.N.Y. Mar.29, 1996); Donnelly v. Port Authority of N.Y. and N.J., 1994 WL 319365 (S.D.N.Y. June 28, 1994); Austin v. Port Authority of N.Y. and N.J., 1993 WL 149033, at *2 (S.D.N.Y. May 5, 1993); Carnegie v. Miller, 811 F.Supp. 907, 914 (S.D.N.Y.1993); Colgan v. Port Authority of N.Y. and N.J., 1991 WL 180384 (E.D.N.Y. Aug.14, 1991); Oslick v. Port Authority of N.Y. and N.J., 83 F.R.D. 494, 495 (S.D.N.Y.1979). Accord Yancoskie v. Delaware River Port Authority, 528 F.2d 722, 727 (3d Cir.1975) (holding same rule applies to bistate agency created by Pennsylvania and New Jersey). Thus, the joinder of the Port Authority would destroy diversity jurisdiction, since plaintiffs are also New York citizens.[8]

---

7. Although this injury occurred on a bridge that spans navigable waters, this court could not exercise admiralty jurisdiction over these claims since traditionally "[a]dmiralty jurisdiction has not been construed to extend to accidents on piers, jetties, bridges, or even ramps or railways running into the sea." Rodrigue v. Aetna Cas. & Sur. Co., 395 U.S. 352, 360, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969). Nor can this Court exercise supplemental jurisdiction over claims made by plaintiffs against an impleaded party. 28 U.S.C. § 1367(b).

8. It should be noted that one court disagreed with this proposition and instead applied the venerable "forum doctrine" to hold that the Port Authority would only be deemed a citizen of the state in which it was sued. Hudak v. Port Authority Trans–Hudson Corp., 238 F.Supp. 790, 791–92 (S.D.N.Y.1965). The "forum doctrine" holds that "a defendant multi-state corporation when sued in one of the states of its incorporation is regarded for diversity purposes as a citizen only of that state, namely, the state in which it is sued." Id. (citing Chicago & N.W. Ry. Co. v. Whitton's Admr., 80 U.S. (13 Wall.) 270, 283, 20 L.Ed. 571 (1871)). Most courts appear to have rejected Hudak, see, e.g., V–1 Oil Co. v. CC & T, Inc., 658 F.Supp. 886, 888 (D.Utah 1987) (collecting cases), and leading commenta-

The Port Authority concurs that it is a citizen of New York based on its place of incorporation. (Port Auth. Supp. Mem. at 14.) Additionally, the Port Authority also argues that it is a citizen of New York because its "nerve center," which defines the principal place of business for a corporation with operations spread out over more than one state, *see R.G.-Barry Corp. v. Mushroom Makers, Inc.,* 612 F.2d 651, 655 (2d Cir.1979), is here in New York. (Finegold Aff., ¶¶ 3–7.)

Plaintiffs, on the other hand, argue that the Port Authority is in fact an entity without citizenship for purposes of federal jurisdiction and that the caselaw to the contrary has merely cursorily analyzed the issue without examining the statutory basis for the Port Authority's existence. (Pl. Supp. Mem. at 2–5.) Plaintiffs base this argument on the theory that the Port Authority is not a traditional corporation, but rather "a carefully crafted tool of both states that exists in a narrowly defined but abstract world." (*Id.,* at 2.) To support this novel idea, plaintiffs first note that § 7106 of the Unconsolidated Laws (which provides for venue in tort cases against the Port Authority) only states that the Port Authority will be deemed a "resident" of any county or judicial district within its territory but does not explicitly state that it shall be a citizen of either state. By contrast, plaintiffs point to the statute providing for venue in actions over leases between air carriers operating out of what is today John F. Kennedy International Airport and the Port Authority. N.Y. Unconsol. L. § 7133, N.J. Stat. § 32:1–171. Section 7133 provides in part that "The Port Authority shall be deemed to be a resident of each such county or judicial district for the purpose of such suits, actions or proceedings [between air carriers and the Port Authority] and shall be deemed to be a citizen of both of said two States."

Where a term is specifically included in one statute but excluded from another, courts can infer that the legislature intended to remain silent about the term excluded. *See* N.Y. Statutes § 74. Since the legislature

intended to exclude the Port Authority from New York citizenship for purpose of tort claims, plaintiffs argue, the Port Authority is therefore a citizen only of its own unique status or nowhere at all.

Plaintiffs also compare the Port Authority to the District of Columbia, an entity also created by the joint action of two states and by Congress. However, the comparison to the District of Columbia is not apt since § 1332 specifically states that the District of Columbia (as well as the territories of the United States and the Commonwealth of Puerto Rico) is to be treated as a state. *See* 28 U.S.C. § 1332(d). No such treatment is provided for the Port Authority or other entities created by interstate compact, and plaintiffs offer no logical reason to treat such entities analogously.

The weight of authority and simple logic leads this Court to conclude that the Port Authority is, like other similar institutions, a corporation governed by the laws applicable to determining corporate citizenship, and thus the Port Authority is a citizen both of New York and New Jersey. Even if the statutory interpretation offered by plaintiffs is correct, however, their argument is not persuasive: this Court has diversity jurisdiction only "where the matter in controversy ... is between: (1) citizens of different States; (2) citizens of a State and citizens or subjects of a foreign state; (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and (4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States." 28 U.S.C. § 1332(a). If the Port Authority is not embraced by any of these categories, then this Court cannot exercise diversity jurisdiction over the controversy between it and the plaintiffs. Nor do plaintiffs explain under which of these four bases this Court would be able to exercise diversity jurisdiction over the Port Authority. Essentially, if plaintiffs' argument were accepted, then the Port Authority would indeed be "unique" and compa-

---

tors have criticized its holding. *See* 13B Wright, Miller, & Kane, *Federal Practice and Procedure,* § 3626 (3d Ed.); 15 *Moore's Fed. Practice* (3d Ed.) § 102.53[2]. Even if the forum rule were

still good law it would not save diversity jurisdiction, since the Port Authority is being sued in New York and the plaintiff is a New York citizen.

rable to that small class of persons who are "stateless" for purposes § 1332(a)(2), and therefore unable to seek relief in the federal courts absent some other basis for jurisdiction, *see Shoemaker v. Malaxa,* 241 F.2d 129, 129 (2d Cir.1957) (per curiam), or else it would be like the District of Columbia, which also is not subject to diversity jurisdiction. *Long v. District of Columbia,* 820 F.2d 409, 413–14 (D.C.Cir.1987).

Accordingly, if the Port Authority is joined as a defendant, its presence would destroy diversity jurisdiction over this action.

### III. Is Joinder Followed by Remand Appropriate?

■ Since joinder of the Port Authority would destroy diversity jurisdiction, this Court is faced with the choice set forth by statute in Section 1447(e) of Title 28: "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." Although the Second Circuit has not spoken to the issue, district courts in this circuit have considered the following factors in determining the effect of joinder motions on cases removed from state court where joinder would destroy diversity between the parties: "(1) any delay, and the reasons for delay, in seeking to amend; (2) any resulting prejudice to the defendant; (3) the likelihood of multiple litigation; and (4) the plaintiff's motivation in moving to amend." *Rosenthal v. Life Fitness Co.,* 977 F.Supp. 597, 600 (E.D.N.Y.1997). Each of these elements is addressed in turn.

### A. Delay

Delay is measured from the time of removal. *Rosenthal,* 977 F.Supp. at 600. About twenty six months passed since the case was removed, and therefore the delay here is significant. By comparison, many cases have denied joinder under § 1447(e) where the delay was comparable or even shorter. *See ARE Sikeston Ltd. P'ship v. Weslock National, Inc.,* 120 F.3d 820, 833 (8th Cir.1997) (delay of 16 months after removal and 5 months after impleader too long); *In re Rezulin Products Liability Litig.,* 2002 WL 31466455, at *1 (S.D.N.Y.2002) (six month delay too long); *DiNardi v. Ethicon,* 145 F.R.D. 294, 298 (N.D.N.Y.1993) (24 months after removal too long). Given the length of delay, the reason for the delay must be explained.

Plaintiffs contend that the reason for the delay was that only after Renato Martin's deposition was taken (in October 2002) did plaintiffs learn of the factual basis on which their Scaffold Law claim is based. At oral argument, plaintiffs explained that an eyewitness from the Port Authority stated that Mr. Da Cruz had been wearing a safety harness and that Mr. Da Cruz's condition post-injury was not conducive to thorough examination of the facts. Plaintiffs also noted that they began to inquire more closely based on a discrepancy between the size of the harness Mr. Da Cruz normally used and the harness shown in photos taken at the time of the accident, but did not explain precisely when this discrepancy was first noticed.

Plaintiffs' explanation is insufficient. Unlike other cases where information about third-party culpability comes out at deposition,[9] here the basis of the claim against the Port Authority is that Mr. Da Cruz did not wear a safety harness at the time of the accident and that New York law requires the Port Authority as owner of the bridge to guarantee the safety of workers thereon. Information about whether Mr. Da Cruz was wearing a safety harness was within his knowledge from the time of the accident in 2000 to the present day, and thus a claim that this information was unknown when the action began requires a thorough explanation.

It is possible that no one ever asked Mr. Da Cruz about the specific issue of safety harnesses. Indeed, at his deposition no one inquired about this issue, and at oral argument plaintiffs indicated that in the months following the accident Mr. Da Cruz was less

---

9. *See Moncion v. Infra–Metals Corp.,* 2002 WL 31834442, at *2–3 (S.D.N.Y. Dec.18, 2002) (permitting amendment of complaint and remand under 28 U.S.C. § 1447(e) despite delay of 11 months after removal based on information discovered during deposition).

than fully able to assist investigators. By contrast, it would appear that Mr. Da Cruz was wearing other types of protective gear at the time of the accident, such as goggles, coveralls and a hood. (*See, e.g.,* Da Cruz Dep. at 55.) However, plaintiffs' arguments ultimately are not persuasive since they had sufficient knowledge to file a notice of claim in August 2000 which asserted that the Port Authority failed "to apply and utilize safety standards" contrary to the Industrial Code and Labor Law of New York. Accordingly, the delay factor weighs against joinder.

## B. Prejudice

The Port Authority argues that it will be prejudiced if the amendment is allowed since discovery has "essentially concluded," and because plaintiff is asserting new theories of liability which have not previously been asserted by any party. Neither factor would support finding prejudice to the Port Authority. Although discovery may essentially be complete, there is no reason why it cannot be reopened for limited purposes if necessary. No pre-trial order is in place. Similarly, it is difficult to see how plaintiff's theory is completely new to the case. The Port Authority has been impleaded since March, 2001, and the third-party complaint does not limit the basis for the Port Authority's comparative fault to any one reason. Moreover, if the Port Authority is indeed partly at fault, then its liability will be the same regardless of whether it is joined as a defendant or simply remains a third-party defendant. The Port Authority will have to litigate this case in any event. Defendants will recoup from the Port Authority its comparative share of fault, if any, and thus the Port Authority will end up paying its comparative share regardless of whether it remains a third party or is joined as a defendant. No prejudice to the Port Authority will result.

On the other hand, plaintiffs claim they will be prejudiced if all available defendants are not joined because CPLR 1601 will prohibit a full recovery if defendants are less than 50% culpable. However, these fears are misplaced. CPLR 1601 provides that "the culpable conduct of any person not a party to the action *shall not be considered* in deter-mining any equitable share herein if the claimant proves that with due diligence he or she was unable to obtain jurisdiction over such person in said action (or in a claim against the state, in a court of this state)." CPLR 1601 (emphasis supplied). If a party cannot be joined because its presence would destroy diversity jurisdiction, then it is considered to be a party over which the plaintiff was "unable to obtain jurisdiction." *See In re Eastern & Southern Districts Asbestos Litig.,* 772 F.Supp. 1380, 1405 (E. & S.D.N.Y. 1991) (Weinstein, J.), *aff'd in part, rev'd in part, In re Brooklyn Navy Yard Asbestos Litig.,* 971 F.2d 831 (2d Cir.1992); *In re Joint Eastern & Southern District Asbestos Litig.,* 1990 WL 124330, at *4 (S.D.N.Y. Aug.20, 1990) (Leval, D.J.).

Accordingly, the prejudice factor is neutral.

## C. Multiple Litigation

Although plaintiffs may be able to relate back the claims in this action, if joinder is denied in order to preserve diversity jurisdiction it is less than clear that plaintiffs will be able to bring an action solely against the Port Authority parallel to this action in state court. Clearly that new action would face the one-year time bar in § 7107. New York law is clear that CPLR 205(a) would not apply to an action against the Port Authority. *Yonkers Contracting, supra.* Thus, there is little risk of multiple litigation arising if joinder is denied.

Accordingly, since there is little or no risk of multiple litigation, this factor is neutral.

## D. Plaintiffs' Motive

Although plaintiffs are entitled to chart their own course in litigation, the Port Authority asks the Court to surmise that by this motion plaintiffs are simply seeking to destroy diversity jurisdiction to the detriment of the diverse parties. (*Id.*) However, instead of moving promptly to "destroy diversity" plaintiffs instead have litigated this action in federal court without protest, and only brought this motion after purportedly realizing that they might indeed have a claim against the Port Authority. The Port Authority's contention regarding plaintiffs' mo-

**136**

tive is not persuasive. *See Rodriguez by Rodriguez v. Abbott Laboratories,* 151 F.R.D. 529, 533 (S.D.N.Y.1993) ("the Court has no reason to suspect that plaintiff is merely attempting to defeat diversity and drag the case into her originally selected forum"); *Shaw v. Munford,* 526 F.Supp. 1209, 1213–14 (S.D.N.Y.1981) ("when there is no showing that the plaintiff seeks to join the additional defendants solely to effectuate a remand, . . . the court may permit a new party to be added, although his citizenship destroys diversity and requires a remand") (citing 1A Moore's Federal Practice, ¶ 0.161[1] at 209 (2d ed.1981)). Indeed, when the Court raised the issue of remand *nostra sponte,* plaintiffs made a noble effort to argue that diversity was not implicated through its aforementioned novel statutory interpretation. There is no reason to infer an improper motive in this case. Thus, absent any ill motive, this factor weighs in favor of permitting joinder.

**E. Balancing the Factors**

As the factors currently stand, the delay factor weighs against permitting joinder. The risk of multiple litigation is minimal, so that factor is neutral. The prejudice factor also is neutral. The lack of an improper motive in seeking to join the Port Authority as a defendant weighs in favor of permitting joinder. Given that the factors balance out evenly, the result of this motion must be to permit plaintiffs to chart the course of their own litigation and to prosecute the claims in the manner of their choice. Accordingly, this Court permits the amendment under 28 U.S.C. § 1447(e) and remands the action to state court.

***CONCLUSION***

For the reasons stated above, plaintiffs' motion for leave to file an amended complaint asserting claims directly against third-party defendant Port Authority is granted. Upon filing of the amended complaint, the Clerk of the Court is directed to remand this action to New York State Supreme Court from which it was removed.